UNITED STATES of America,
Plaintiff,

v.

Langdon C. PARKER, Mrs. William H. Dent, Jr., and G. F. Williams, Registrars of Voters of Montgomery County, Alabama, and State of Alabama, Defendants.

Civ. A. No. 1741–N.

United States District Court
M. D. Alabama, N. D.

Dec. 17, 1964.

Ben Hardeman, U. S. Atty, Montgomery, Ala., Jonathan B. Sutin and Arvid A. Sather, Attys., Dept. of Justice, Washington, D. C., for plaintiff.

Richmond M. Flowers, Atty. Gen. of Alabama, Leslie Hall, Asst. Atty. Gen., of Alabama, and D. W. Crosland, Sol., Fifteenth Judicial Circuit, State of Alabama, Montgomery, Ala., for defendants.

JOHNSON, District Judge.

This action was originally instituted in August, 1961, by the Attorney General of the United States in the name of the United States pursuant to the provisions of Part IV of the Civil Rights Act of 1957 (42 U.S.C.A. § 1971, 71 Stat. 637) as amended by the Civil Rights Act of 1960 (74 Stat. 90). The State of Alabama was joined as a party defendant pursuant to Section 601(b) of the Civil Rights Act of 1960; the individual defendants were joined as members of the Board of Registrars of Montgomery County, Alabama.

Upon the original submission of this cause, this Court, sitting without a jury, on consideration of the evidence, consisting of the oral testimony of over 175 witnesses, together with approximately 13,000 exhibits, made and entered findings of fact and conclusions of law, and, as authorized by Rule 52, Federal Rules of Civil Procedure, incorporated those findings and conclusions in a memorandum opinion; this opinion is published as United States v. Penton, 212 F.Supp. 193 (M.D.Ala.1962). At that time this Court found that the defendant State and its agents, including the registrars of Montgomery County, Alabama, had deliberately and consistently engaged in procedures and practices which favored white applicants to vote and, pursuant to these procedures and practices, had discriminated against Negro applicants to vote in Montgomery County, Alabama. This Court found that this discrimination was in violation of the Fourteenth and Fifteenth Amendments to the Constitution of the United States in that it involved procedures and practices designed to deny (and which were effective in denying) citizens the right to vote without regard to race or color. United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524; United States v. Thomas, 362 U.S. 58, 80 S.Ct. 612, 4 L.Ed.2d 535; and United States v. State of Alabama, 192 F.Supp. 677 (M.D.Ala. 1961), 304 F.2d 583 (5th Cir. 1962), affirmed by the Supreme Court of the United States, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112 (1962).

In the original opinion as made and entered in this case, this Court further found that under the Civil Rights Act of 1957, as amended in 1960, where a finding of discrimination had been made and where such discrimination had resulted in a deprivation of voting rights pursuant to a pattern and practice, the Negro applicants who had thus been deprived of their right to vote might apply to the Federal court to be registered and, further, that in determining whether such applicants were qualified, the Court must apply the same standards used by the Board of Registrars in qualifying white applicants during the period within which the pattern of discrimination had been found to exist. This Court therefore found it necessary to determine exactly what those standards were as used by the Montgomery County Board of Registrars in registering white applicants. After determining those standards and applying the same standards to Negro applicants, this Court held that by the Board's use of different and more stringent standards certain Negro applicants had been denied the right to register solely because of their color, and,

upon this finding, it was specifically ordered that specified Negro applicants be registered by the Board of Registrars of Montgomery County, Alabama. The original decree issued in this case was designed to accomplish three purposes:

"1. To partially correct and rectify the effects of the Board's past discriminatory practices by placing on the registration rolls immediately the Negro citizens who were rejected solely on ac-account of their race;

"2. To forbid the continuation of such discriminatory practices;

"3. To establish the actual 'qualification standards' under which the Board of Registrars has accepted white applicants in the past and to set forth the rules and standards which the Board is to follow in determining whether applicants are qualified to register to vote in Montgomery County, Alabama. Such a decree will facilitate registration under the federal referee provisions of the Civil Rights Act if future conduct by the defendants makes this course necessary."

Subsequent to this Court's original opinion and injunction, the United States on June 13, 1963, filed a motion requesting the issuance of an order appointing voting referees for Montgomery County and ordering the defendant registrars to register certain named rejected Negro applicants. Upon the hearing of this motion, a decision was reserved, and this motion is still under submission. On July 2, 1964, the United States filed another motion, wherein this Court is requested to enjoin the defendants from:

"[R]ejecting any applicant on the ground that he failed to complete satisfactorily one or more of the tests provided for in Part III of the application presently being used in the registration of voters in Montgomery County, Alabama."

The United States also seeks an order requiring the defendant registrars to place upon the permanent voter registration rolls of Montgomery County, Alabama, certain Negro applicants whose applications, according to the motion, show them to be qualified to vote under the law of Alabama and the decree of this Court; in addition, the United States has renewed its prior motions. Therefore, upon this submission, the total period involved in the application of the United States for an order requiring the defendants to place upon the permanent voter registration rolls of Montgomery County, Alabama, those Negro applicants for registration who are qualified but have been rejected is from December, 1962 to July, 1964.

On August 10, 1964, the defendants filed a motion asking this Court to dismiss and discharge the injunction issued on November 20, 1962, for the reasons (1) that more than one year has expired since the issuance of the injunction and that since that time the defendants have not engaged in any pattern or practice to deprive, on account of race or color, any citizen of the United States of the right to vote who is otherwise qualified to vote; (2) that an adequate time has been provided for those Negroes who desire to register and complete their registration during the period from November 20, 1962, through April 1, 1964; (3) that the registration requirements have been "frozen" for a reasonable or adequate period of time; (4) that there has been no pattern or practice of discrimination against Negro registrants since the issuance of the injunction on November 20, 1962, and this Court lacks jurisdiction to continue the injunction; (5) that the provisions of Title 42, § 1971, provide that said injunction issued by the Court on November 20, 1962, should not remain in effect for more than one year unless the Court subsequently finds that such pattern or practice is continued; and (6) that the Congress of the United States contemplates that no injunction should issue against

the Board for a period in excess of one year unless a pattern or practice of discrimination against Negroes continues.

This cause was submitted on these issues. Upon consideration of the evidence, consisting of the oral testimony of several witnesses, including the testimony of the present chairman of the Board of Registrars, together with the registration records showing the action of the Montgomery County Board of Registrars since September 16, 1963, and the briefs and arguments, this Court now proceeds to make and enter the appropriate findings of fact and conclusions of law, and, as authorized by Rule 52, Federal Rules of Civil Procedure, incorporates those findings and conclusions in this memorandum opinion.

The requirements and procedures for registration and voting in Alabama are contained in the Constitution of Alabama of 1901, Article VIII, Sections 177–196, and in the Code of Alabama, Title 17, Sections 1–432. Under the law, the Board of Registrars has a duty to register qualified applicants as expeditiously as possible. As stated above, this Court in its opinion rendered originally in this case on November 20, 1962, United States v. Penton, supra, found that for white persons the registration application was not used by the Montgomery County Board of Registrars as an examination or test and that the Board, in compliance with the Alabama law, had certain substantive qualifications that were applied to white applicants. These qualifications, as stated in this Court's prior order, were and are:

1. The applicant must be a citizen and twenty-one years of age or older;

2. The applicant must have resided in the State one year, in the county six months and in his voting precinct three months prior to any election in which he seeks to vote;

3. The applicant must be able to read and write;

4. The applicant must be of good character and he must embrace the duties and obligations of citizenship;

5. The applicant is disqualified from voting if he is an idiot or insane person, or if he has been convicted of any of several enumerated crimes.

According to the specific findings of this Court, white applicants were not rejected for inability to read or write if they were able to fill in the application form. As to Negro applicants, this Court found that the Board:

"Used the questionnaire to obtain substantive information regarding the applicant's qualifications for registering and also as a tricky examination or test. If a Negro applicant failed to meet the standard required of him, he was denied registration regardless of whether the error or omission on the form was formal, technical, or inconsequential."

This Court in its prior order has specifically enjoined the defendants from using different and more stringent qualification requirements for registration than those requirements of State law used by the Board in registering white persons between 1956 and January, 1962, and the defendants have been enjoined from:

"Using a form of application or questionnaire different from and more stringent than that used in registering persons between 1956 and January 3, 1962."

Upon the original submission of this case, the evidence reflected that the Montgomery County Board of Registrars was using a four-page application form, which was prescribed by the Supreme Court of Alabama. On January 14, 1964, the Supreme Court of Alabama prescribed a new application form that was to be used by the several Boards of Registrars throughout the State in conducting voter registration. This new five-page application form was first used by the Montgomery County Board on March 16, 1964, and consists of six

parts. Part I contains background in-. formation about the applicant and is to be filled out by the Board. Part II contains questions concerning personal and background information about the applicant. A major departure from the old form, and the procedure formerly followed, is in Part III. In this part the applicant is required to answer questions on government, to read from a section of the United States Constitution and to write, or copy, excerpts from the Constitution. The supplemental order of the Alabama Supreme Court setting forth the contents of each test to be used is set out in full in Appendix "A" to this opinion. The contents of the Part III test are to be changed each month. Part IV of the new application contains the loyalty oath. Part V relates to the action taken by the Board, and Part VI is the examination of the supporting witness; Part VI has not been and is not now being used by the Montgomery County Board.

As stated above, this Court has enjoined the defendants from using qualification requirements and/or tests different from and more stringent than the substantive requirements used by the Board in registering white persons during the period in which the discrimination was found to have existed. The defendants have also been enjoined from using the application as an examination or test—a practice which has resulted in applicants being rejected for technical and inconsequential errors and omissions. The evidence in this case as now presented upon the pending motions, leads this Court to the inevitable conclusion that the Part III test as prescribed by the Supreme Court of Alabama and as used by the Montgomery County Board of Registrars since March 16, 1964, consists of qualifications different from and more stringent than those used in registering white persons between 1956 and January, 1962: This conclusion is made inevitable by the uncontradicted evidence that for the first time in voter registration in Montgomery County, Alabama, applicants for registration are required to answer ques-

tions on government. Prior to July 2, 1964, the effective date of the 1964 Civil Rights Act, applicants were required to read aloud and write from dictation excerpts from the United States Constitution in order to prove that they were literate; during the period of discrimination, that is, between 1956 and January, 1962, no such tests were used. Such testing, by the use of questions on government, provides a new and different subject of examination and provides questions of a different type not before used. These Part III questions seek to test the applicants' knowledge of various aspects of government, including the names of elected officials; nowhere in the old application form was this type of question used. The Part III reading tests—when they were being used—required the applicants to pronounce correctly words that were not on the old application forms. The applicants were required to read and pronounce correctly such words as "delegated," "prohibited," "respectively," "construed," "apportioned," "enumeration," "ordain," and "affirmation."

After July 2, 1964, the Montgomery County Board stopped requiring applicants to read aloud and interpret the excerpts from the Constitution. The cessation of this requirement was in compliance with that portion of the Civil Rights Act of 1964 (Public Law 88–352) that such tests, to prove literacy, must be wholly in writing. Since July 2, 1964, the Board has required applicants to write by copying excerpts on the Part III form. The Board now uses as one of the bases for rejecting Negro applicants their failure to write satisfactorily excerpts from the Constitution. There is no question that the practice followed by this Board up until July 2, 1964, of requiring applicants to write from dictation, had the inevitable effect of subjecting these applicants to technical standards to which white applicants in the past had not been subjected. These practices violate the Civil Rights Act and the Fourteenth and Fifteenth Amendments to the Constitution of the United

States. In this connection, see United States v. State of Louisiana, D.C., 225 F.Supp. 353; Davis v. Schnell, D.C., 81 F.Supp. 872, aff'd 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093. The writing test, as now used, contains the same defect of subjectivity and nonuniformity of standards as the reading test.

The statistical evidence standing alone proves that the new test is more difficult than any of the tests previously used by the Montgomery County Board.

After the defendants began using the Part III test, the percentage of rejected Negro applicants rose sharply. In the five and one-half month period immediately prior to March 16, 1964, 19 percent of the Negro applicants were rejected. During the period March 16, 1964, to August 1, 1964, when the Part III test was being used, 34 percent were rejected. This change is clearly demonstrated by the following statistical table:

### ACCEPTED AND REJECTED APPLICATIONS OF WHITE AND NEGRO APPLICANTS

#### October 1, 1963, through July 31, 1964

| | | Total Applied | | Accepted | | Rejected | | Percent Rejected | |
|---|---|---|---|---|---|---|---|---|---|
| | | W | N | W | N | W | N | W | N |
| October, 1963 | W | 95 | | 82 | | 13 | | 13.7 | |
| | N | | 106 | | 80 | | 26 | | 24.5 |
| November, 1963 | W | 251 | | 217 | | 34 | | 13.5 | |
| | N | | 135 | | 114 | | 21 | | 15.6 |
| December, 1963 | W | 695 | | 625 | | 69 | | 9.9 | |
| | N | | 76 | | 61 | | 15 | | 19.7 |
| January, 1964 | W | 1328 | | 1205 | | 121 | | 9.1 | |
| | N | | 253 | | 207 | | 45 | | 17.8 |
| February, 1964 | W | 75 | | 63 | | 12 | | 16.0 | |
| | N | | 36 | | 24 | | 12 | | 33.3 |
| March 2, 1964 | W | 26 | | 26 | | 0 | | 0 | |
| | N | | 28 | | 24 | | 4 | | 14.3 |
| March 16, 1964 | W | 46 | | 44 | | 2 | | 4.3 | |
| | N | | 28 | | 28 | | 0 | | 0 |
| April, 1964 | W | 245 | | 241 | | 4 | | 1.6 | |
| | N | | 279 | | 198 | | 80 | | 28.7 |
| May, 1964 | W | 29 | | 29 | | 0 | | 0 | |
| | N | | 12 | | 11 | | 1 | | 8.3 |
| June, 1964 | W | 98 | | 98 | | 0 | | 0 | |
| | N | | 111 | | 75 | | 36 | | 32.4 |
| July, 1964 | W | 96 | | 94 | | 2 | | 2.1 | |
| | N | | 207 | | 105 | | 102 | | 49.3 |
| TOTAL | W | 2984 | | 2724 | | 257 | | 8.6 | |
| | N | | 1271 | | 927 | | 342 | | 26.9 |

It follows, therefore, that since the November 20, 1962, decree the Board of Registrars for Montgomery County has continued to engage in a pattern and practice of discrimination against Negro applicants. These patterns and practices are in violation of this Court's injunction and of the Federal and State laws. The effect of the Board's continued practices is to reject qualified Negro applicants for technical and inconsequential errors and omissions. The effect is also to subject the current Negro applicants to different and more stringent technical

standards and requirements than those used for the registration of white applicants in the past. The Montgomery County Board of Registrars' continued use of these different and more stringent standards results in discrimination against Negroes by "freezing" the white voters in the permanent status and "freezing" the Negro applicants out. The law is clear that where such illegal discrimination has worked inequality on a class of citizens and the Court puts an end to such practice, but a new standard is adopted before the discriminated-against class may have the effect of their discrimination eradicated, the use of the new and more stringent standard is violative of 42 U.S.C. § 1971(a) and the Fourteenth and Fifteenth Amendments to the Constitution of the United States. United States v. Duke, 332 F.2d 759 (5th Cir. 1964). See also this Court's opinion in United States v. Cartwright, D.C., 230 F.Supp. 873 (June 1964).

The evidence in this case reflects that because of the continued pattern and practice of discrimination on the part of the Montgomery County Board of Registrars, the injunction as issued by this Court in November, 1962, has not corrected the effects of the past discrimination against Negro applicants for registration. From the date the original injunction in this case was issued to March 2, 1964, there has been a continued use of the old application form by the Montgomery County Board to reject qualified Negro applicants for technical and inconsequential errors and omissions. Since that date, the new application form not only has been used as a means for continuing the rejection of qualified Negro applicants for technical and inconsequential errors and omissions, but has constituted a different and more stringent test than that used by the Board during the period when the standards were determined by this Court in its original opinion. Furthermore, the evidence is clear that since the issuance of the original order and continuing up until the time of the hearing, applicants have been and are still being required to wait in line for unreasonable periods of time in order to apply for registration to vote in Montgomery County, Alabama.

The injunction as originally issued in this case upon the basis of the opinion of this Court in United States v. Penton, 212 F.Supp. 193 (Nov. 20, 1962), is a permanent one, authorized under 42 U.S.C. § 1971(c), and was designed to prevent discrimination in voter registration in Montgomery County, Alabama, on account of race. Since the Board has not only failed to correct the effects of past discrimination, but has continued to engage in acts and practices of discrimination since the original decree, the injunction as originally issued should remain in force and effect; in addition, it should be made clear that the use of Part III is considered by this Court to be a test more stringent than any the white applicants to register of Montgomery County, Alabama, were subjected to during the initial period under consideration by this Court. This Court is cognizant of the observation by the United States Court of Appeals for the Fifth Circuit in United States v. Duke, supra, that a period of one year after the date of the trial court's order should be an adequate time for those Negroes who desire to register to do so; and, as the appellate court did in the Duke case, this Court sees no reason why that part of this Court's injunction prohibiting the use of different and more stringent standards cannot be eliminated after the pattern and practice of discrimination ceases and after a reasonable opportunity to register to vote is afforded all citizens without regard to race or color. However, we are not at this time dealing with court action qualifying persons to vote, but are dealing with Board action in failing to register qualified applicants and in failing to afford qualified applicants a reasonable opportunity for a reasonable period of time. This Court does not understand that the Court of Appeals in United States v. Duke, supra, or the Congress in 42 U.S.C. § 1971(e) intended the one year "suggested" period to

apply where, as here, the discrimination has continued to exist since the original finding of discrimination and the issuance of the original decree. In order to eliminate the effect of past discrimination against Negro applicants to register in Montgomery County, Alabama, there can be set no time limit until an adequate opportunity has been afforded those desiring to register. There has been no such opportunity here, either as to the standards and requirements or as to time afforded. It follows, therefore, that the injunction issued in this case is to continue in full force and effect for a reasonable period of time after the pattern and practice of discrimination has ceased to exist.

 Even though there has been a long history of discrimination in voter registration in Montgomery County, Alabama, and even though the pattern and practice of discrimination has continued to exist since the issuance of the original injunction in this case, this Court does not, as yet, see any need to appoint federal voting referees for Montgomery County, Alabama. This is true since affirmative relief was afforded this plaintiff in the original order of this Court made and entered in this case on November 20, 1962, by requiring the registrars to place upon the current and permanent registration rolls of Montgomery County, Alabama, the names of the Negro citizens of Montgomery County, Alabama, who had applied for registration and were qualified to be registered, but had been rejected because of their race. The evidence in this case, upon this present submission, reflects the names of additional Negro citizens of Montgomery County, Alabama, who have applied for registration and are qualified to be registered, but have been rejected because of their color; a good number of these Negro citizens are veterans; a substantial number are high school graduates; some are college graduates and several are school teachers. In the formal order to be issued in this case, this Court will (as it did in the original decree) direct that the defendants place upon the current permanent registration rolls the names of these Negro citizens; these names are listed in Appendix "B" attached hereto and incorporated herein.* A review of the applications for registration by the Court indicates and, as stated, the evidence in this case reflects that the Negro applicants who will be registered by order of this Court have been denied registration solely on account of their race or color. In this connection, this Court specifically finds that each of said applicants was at the time of his application qualified to register to vote under the Alabama law and under the practice and procedures followed by the Board of Registrars of Montgomery County in regard to white applicants. It follows, therefore, that each of said Negro applicants listed in said appendix was qualified to register at the time of the filing of his application and that each such applicant is to be registered unless he has been subsequently registered, has become deceased, or possessed with some disqualification to register to vote since the date of his application.

This Court will enter a formal order in this case denying the motion of the United States which seeks to have federal voting referees appointed for Montgomery County, Alabama; denying the motion of the defendants which seeks to have dissolved the original injunction issued in this case; granting the motion of the United States in part and denying said motion in part wherein it seeks to have certain named Negro applicants ordered registered; and granting the motion of the United States which asks this Court to amend its original decree to enjoin the defendants from rejecting any applicant for registration to vote on the ground that he failed to complete satisfactorily any part of the Part III insert in the application presently being used in the registration of voters in Montgomery County, Alabama.

---

* The list of names referred to as Appendix "B" is omitted from the opinion as published.

## APPENDIX "A"

### SUPPLEMENTAL ORDER OF THE SUPREME COURT OF ALABAMA

IN RE: APPLICATION FOR REGISTRATION QUESTIONNAIRE AND OATH

### SUPPLEMENTAL ORDER

WHEREAS, heretofore on the 29th day of March, 1960, this Court prescribed the form and content of a questionnaire and oath to aid the members of boards of registrars, all as set forth in the order made and entered on the date aforesaid; and

WHEREAS, the Legislature of Alabama has enacted Act No. 92, approved July 26, 1961. Acts of Alabama, 1961, Vol. I, page 107; which provides for the filing of twelve sets of questions so that a different questionnaire may be used each month;

NOW, THEREFORE, in compliance with Section 181 of the Constitution of Alabama of 1901, as amended, and said Act No. 92, it is ordered by the Supreme Court of Alabama, as follows:

The questionnaire, omitting Insert Part III which is to be inserted as hereinafter provided for, shall be as follows:

### APPLICATION FOR REGISTRATION QUESTIONNAIRE AND OATHS

#### PART I

(This is to be filled in by a member of the Board of Registrars or a duly authorized clerk of the board. If applicant is a married woman, she must state given name by which she is known, maiden surname, and married surname, which shall be recorded as her full name.)

Full name: _____
 Last First Middle

Date of birth: _____ Sex _____

Race _____

Residence Address: _____

Mailing Address: _____

Voting Place: Precinct ____ Ward ____

District _____

Length of Residence: In State _____

County _____

Precinct, ward or district _____

Are you a member of the Armed Forces? _____

Are you the wife of a member of the Armed Forces? _____

Are you a college student? _____ If so, where _____

Have you ever been registered to vote in any other state or in any other county in Alabama? _____ If so, when and in what state and county and, if in Alabama, at what place did you vote in such county? _____

Highest grade, 1 to 12, completed _____

Where _____

Years college completed _____

Where _____

#### PART II

(To be filled in by the applicant in the presence of the Board of Registrars without assistance.)

I, _____, do hereby apply to the Board of Registrars of _____ County, State of Alabama, to register as an elector under the Constitution and laws of the State of Alabama and do herewith submit my answers to the interrogatories propounded to me by the board.

_____
(Signature of Applicant)

1. Are you a citizen of the United States? _____

2. Where were you born? _____

3. If you are a naturalized citizen, give number appearing on your naturalization papers and date of issuance _____

4. Have you ever been married? _____ If so, give the name, residence and place of birth of your husband or wife _____

 Are you divorced? _____

5. List the places you have lived the past five years, giving town or county and state _____

6. Have you ever been known by any name other than the one appearing on this application? _____ If so, state what name _____

7. Are you employed? _____ If so, state by whom. (If you are self-employed, state this.) _____

8. Give the address of your present place of employment _____

9. If, in the past five years, you have been employed by an employer other than your present employer, give name of all employers and cities and states in which you worked _____

10. Has your name ever been stricken for any reason from any list of persons registered to vote? _____ If so, where, when, and why? _____

11. Have you previously applied for and been denied registration as a voter? _____ If so, when and where? _____

12. Have you ever served in the Armed Forces? _____ If so, give dates, branch of service, and serial number.

13. Have you ever been dishonorably discharged from military service? _____

14. Have you ever been declared legally insane? _____ If so, give details.

15. Give names and addresses of two persons who know you and can verify statements made above by you relative to your residence in this state, county and precinct, ward or district _____

16. Have you ever seen a copy of this registration application form before receiving this copy today? _____ If so, when and where? _____

17. Have you ever been convicted of any offense or paid any fine for violation of the law? _____ (Yes or No) If so, give the following information concerning each fine or conviction; charge, in what court tried, fine imposed, sentence, and, if paroled, state when, and if pardoned, state when. (If fine is for traffic violation only, you need write below only the words "traffic violation only.")

_____

_____

_____

(Remainder of this form is to be filled out only as directed by an individual member of the Board of Registrars.)

## PART III

Part III of this questionnaire shall consist of one of the forms which are Insert Part III as herein below set out. The insert shall be fastened to the questionnaire. The questions set out on the insert shall be answered according to the instructions therein set out. Each applicant shall demonstrate ability to read and write as required by the Constitution of Alabama, as amended, and no person shall be considered to have completed this application, nor shall the name of any applicant be entered upon the list of registered voters of any county until after such Inserted Part III of the questionnaire has been satisfactorily completed and signed by the applicant.

PLEASE INSERT PART III HERE

## PART IV

### OATHS

STATE OF ALABAMA

_____ COUNTY

Before me, _____ a registrar in and for said county and state, personally appeared _____

an applicant for registration as an elector, who being first duly sworn deposes and says:

"I do solemnly swear (or affirm) that the foregoing answers to the interroga-

tories are true and correct to the best of my knowledge, information and belief. I do further personally swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of Alabama; that I do not believe in nor am I affiliated with any group or party which advocated or advocates the overthrow of the United States or the State of Alabama by unlawful means. I do further solemnly swear (or affirm) that in the matter of this application for registration I have spoken the truth, the whole truth and nothing but the truth, so help me God."

_____
(Signature of Applicant)

Sworn to and subscribed before me this the _____ day of _____, 19___.

_____
(Signature of Board Member)

Explanation and Remarks

Board members interviewing applicants may place here any special explanations, such as residence status, or other remarks for purposes of clarification. If person is blind or is otherwise physically handicapped to such an extent that he cannot fill out this application form, the circumstances are to be recorded here, along with an explanation of the method used to determine if the person is, in fact, literate and can spell words and recognize those spelled to him, or can read large black letters and words in the case of persons with slight handicaps. _____

_____
_____
_____
_____

PART V

Action of the Board

STATE OF ALABAMA

_____ COUNTY

The applicant, _____,
appeared before the board of registrars for said state and county in a regular session and executed the foregoing application in the manner prescribed by law. The Board, having further examined said applicant under oath, touching his qual-

ifications under Section 181, Constitution of Alabama, as amended, and having fully considered the foregoing application for registration, questionnaire and oaths, adjudges said applicant entitled to be registered and he was duly registered this the _____ day of _____, 19___.

Signed: _____
Chairman

_____
Member

_____
Member

(NOTE: The act of actually determining an applicant entitled to be registered is judicial. A majority of the Board must concur. A majority must be present. The power cannot be delegated. Each member must vote on each application. Not until this is done may a certificate be issued the applicant.)

The Applicant, _____,
due to the failure to meet the requirements of state law for registration as an elector, is hereby rejected on this the _____ day of _____, 19___.

Signed: _____
Chairman

_____
Member

_____
Member

PART VI

Examination of Supporting Witness

(The witness shall be placed under oath to tell the truth, the person administering the oath being a Board member or other person authorized to administer oaths and acting under the direction of the Board.)

Name of Witness _____
Address _____
Place of Voting _____

"I have known the applicant _____ _____ for _____ years and _____ months and I have personal knowledge that his place of residence is _____

_____
and that he has resided in the State of Alabama at least one year and in

——————— County for at least six months."

———————————————————
Signature of Witness

Sworn to and subscribed before me this the ———— day of ——————, 19——.

———————————————————
(Person Administering Oath)
Date ——————————————

Insert Part III shall be in twelve different forms as follows:

## INSERT PART III(1)

(The following questions shall be answered by the applicant without assistance.)

1. What city is the capital of the United States? ——————————————

2. How many states are there in the United States? ——————————

3. How many senators from each state are in the United States Senate? ——

4. The president of the United States is elected for a term of how many years? ——————————

## INSTRUCTION "A"

The applicant will complete the remainder of this questionnaire before a Board member and at his instructions. The Board member shall have the applicant read any one or more of the following excerpts from the U. S. Constitution using a duplicate form of this Insert Part III. The Board member shall keep in his possession the application with its inserted Part III and shall mark thereon the words missed in reading by the applicant.

———————————————————
Excerpts from the Constitution

1. "The powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

2. "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."

3. "Representatives shall be apportioned among the several states according to their respective numbers, counting the whole number of persons in each state, excluding Indians not taxed."

4. "The congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

## INSTRUCTION "B"

The Board member shall then have the applicant write several words, or more if necessary to make a judicial determination of his ability to write. The writing shall be placed below so that it becomes a part of the application. If the writing is illegible, the Board member shall write in parentheses beneath the writing the words the applicant was asked to write.

HAVE APPLICANT WRITE HERE, DICTATING WORDS FROM THE CONSTITUTION.

———————————————————
———————————————————

Signature of Applicant: ——————————

xxxxxxxxx

## INSERT PART III(2)

(The following questions shall be answered by the applicant without assistance.)

1. What city is the capital of Alabama? ——————————————

2. How old must a person be in order to be eligible to vote in Alabama? ————

3. What is the lawmaking body of the United States called? ——————

4. The Constitution of the United States provides that Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. (True or false) ——

———————————————————
INSERT HERE THE SAME INSTRUCTIONS "A" WHICH APPEAR ABOVE AT THE CORRESPOND-

ING PLACE IN INSERT PART III (1)

---

### Excerpts from the Constitution

1. "The house of representatives shall be composed of members chosen every second year by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature."

2. "Each state shall appoint, in such manner as the legislature thereof may direct, a number of electors, equal to the whole number of senators and representatives to which the state may be entitled in the congress; but no senator or representative, or person holding an office of trust or profit under the United States, shall be appointed an elector."

3. "The judicial power of the United States, shall be vested in one supreme court, and in such inferior courts as the congress may from time to time ordain and establish."

4. "The senators and representatives before mentioned, and the members of the several state legislatures, and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this constitution."

---

INSERT HERE THE SAME INSTRUCTIONS "B" WHICH APPEAR ABOVE AT THE CORRESPONDING PLACE IN INSERT PART III (1).

---

Signature of Applicant: _____

xxxxxxxxx

### INSERT PART III (3)

(The following questions shall be answered by the applicant without assistance.)

1. In what town or city is the courthouse located in this county? _____

2. How many stars are there in the United States Flag? _____

3. What is the lawmaking body of Alabama called? _____

4. Those who shall be convicted of any crime punishable by imprisonment in the state penitentiary shall be disqualified from voting in Alabama. (True or false) _____

---

INSERT HERE THE SAME INSTRUCTIONS "A" WHICH APPEAR ABOVE AT THE CORRESPONDING PLACE IN INSERT PART III (1).

---

### Excerpts from the Constitution

1. "The congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States; and nothing in this constitution shall be so construed as to prejudice any claims of the United States, or of any particular state."

2. "The ratification of the conventions of nine states, shall be sufficient for the establishment of this constitution between the states so ratifying the same."

3. "The electors shall meet in their respective states, and vote by ballot for president and vice-president, one of whom, at least, shall not be an inhabitant of the same state with themselves."

4. "The person having the greatest number of votes as vice-president, shall be the vice-president, if such number be a majority of the whole number of electors appointed, and if no person have a majority, then from the two highest numbers on the list, the senate shall choose the vice-president; a quorum for the purpose shall consist of two-thirds of the whole number of senators, and a majority of the whole number shall be necessary to a choice."

INSERT HERE THE SAME INSTRUC-
TIONS "B" WHICH APPEAR
ABOVE AT THE CORRESPOND-
ING PLACE IN INSERT PART
III (1).

_____

_____

Signature of Applicant: _____

xxxxxxxxx

INSERT PART III (4)

(The following questions shall be an-
swered by the applicant without assis-
tance.)

1. What is the chief executive of the
 United States called? _____

2. Name the two major political parties
 in the United States.

 _____

3. Who coins money, the state or the
 United States? _____

 _____

4. If the president dies, who takes his
 place? _____

 _____

INSERT HERE THE SAME INSTRUC-
TIONS "A" WHICH APPEAR
ABOVE AT THE CORRESPOND-
ING PLACE IN INSERT PART
III (1).

_____

Excerpts from the Constitution

1. "The times, places, and manner of
holding elections for senators and repre-
sentatives, shall be prescribed in each
state by the legislature thereof; but the
congress may at any time by law make
or alter such regulations, except as to
the places of choosing senators."

2. "Treason against the United States,
shall consist only in levying war against
them, or in adhering to their enemies,
giving them aid and comfort."

3. "All legislative powers herein
granted shall be vested in a congress of
the United States, which shall consist of a
senate and house of representatives."

4. "The senators and representatives
before mentioned, and the members of
the several state legislatures, and all ex-
ecutive and judicial officers, both of the
United States and of the several states,
shall be bound by oath or affirmation,
to support this constitution; but no re-
ligious tests shall ever be required as a
qualification to any office or public trust
under the United States."

INSERT HERE THE SAME INSTRUC-
TIONS "B" WHICH APPEAR
ABOVE AT THE CORRESPOND-
ING PLACE IN INSERT PART
III (1).

_____

_____

Signature of Applicant: _____

xxxxxxxxx

INSERT PART III (5)

(The following questions shall be an-
swered by the applicant without assis-
tance.)

1. What is the chief executive of Ala-
 bama called? _____

2. Are post offices operated by the state
 or federal government? _____

3. What is the name of the president
 of the United States? _____

4. To what national lawmaking body
 does each state send senators and
 representatives? _____

INSERT HERE THE SAME INSTRUC-
TIONS "A" WHICH APPEAR
ABOVE AT THE CORRESPOND-
ING PLACE IN INSERT PART
III (1).

_____

Excerpts from the Constitution

1. "The right of the people to be se-
cure in their persons, houses, papers, and
effects, against unreasonable searches and
seizures, shall not be violated, and no
warrants shall issue, but upon probable
cause, supported by oath or affirmation,
and particularly describing the place to
be searched, and the persons or things
to be seized."

2. "Representatives shall be appor-
tioned among the several states according

to their respective numbers, counting the whole number of persons in each state, excluding Indians not taxed."

3. "Treason against the United States, shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort."

4. "The senators and representatives before mentioned, and the members of the several legislatures, and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this constitution."

INSERT HERE THE SAME INSTRUC- TIONS "B" WHICH APPEAR ABOVE AT THE CORRESPOND- ING PLACE IN INSERT PART III (1).

Signature of Applicant: _____

xxxxxxxxx

INSERT PART III (6)

(The following questions shall be an- swered by the applicant without assis- tance.)

1. How many senators from each state are in the United States Senate?

_____

2. The president of the United States is elected for a term of how many years? _____

3. What is the name of the governor of Alabama? _____

4. Of what political party is the presi- dent of the United States a member?

_____

INSERT HERE THE SAME INSTRUC- TIONS "A" WHICH APPEAR ABOVE AT THE CORRESPOND- ING PLACE IN INSERT PART III (1).

Excerpts from the Constitution

1. "The judicial power of the United States, shall be vested in one supreme court, and in such inferior courts as the congress may from time to time ordain and establish."

2. "All bills for raising revenue shall originate in the house of representa- tives; but the senate may propose or concur with amendments as on other bills."

3. "Every bill which shall have passed the house of representatives and the senate, shall, before it becomes a law, be presented to the president of the Unit- ed States."

4. "The times, places, and manner of holding elections for senators and rep- resentatives, shall be prescribed in each state by the legislature thereof; but the congress may at any time by law make or alter such regulations, except as to the places of choosing senators."

INSERT HERE THE SAME INSTRUC- TIONS "B" WHICH APPEAR ABOVE AT THE CORRESPOND- ING PLACE IN INSERT PART III (1).

Signature of Applicant: _____

xxxxxxxxx

INSERT PART III (7)

(The following questions shall be an- swered by the applicant without assis- tance.)

1. What is the lawmaking body of the United States called? _____

2. The Constitution of the United States provides that Congress shall make no law respecting an establishment of religion, or prohibiting the free ex- ercise thereof.

(True or false) _____

3. Name one of the United States sen- ators from Alabama.

_____

4. When residents of a city elect their officials, the voting is called a muni- cipal election. (True or false) _____

INSERT HERE THE SAME INSTRUC-
TIONS "A" WHICH APPEAR
ABOVE AT THE CORRESPOND-
ING PLACE IN INSERT PART
III (1).

### Excerpts from the Constitution

1. "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state."

2. "The powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

3. "The ratification of the conventions of nine states, shall be sufficient for the establishment of this constitution between the states so ratifying the same."

4. "The congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States; and nothing in this constitution shall be so construed as to prejudice any claims of the United States, or of any particular state."

INSERT HERE THE SAME INSTRUC-
TIONS "B" WHICH APPEAR
ABOVE AT THE CORRESPOND-
ING PLACE IN INSERT PART
III (1).

Signature of Applicant: _____

xxxxxxxxx

### INSERT PART III (8)

(The following questions shall be answered by the applicant without assistance.)

1. What is the lawmaking body of Alabama called? _____

2. Those who shall be convicted of any crime punishable by imprisonment in the state penitentiary shall be disqualified from voting in Alabama.
(True or false) _____

3. How many states are in the United States? _____

4. What city is the capital of the United States? _____

INSERT HERE THE SAME INSTRUC-
TIONS "A" WHICH APPEAR
ABOVE AT THE CORRESPOND-
ING PLACE IN INSERT PART
III (1).

### Excerpts from the Constitution

1. "The electors shall meet in their respective states, and vote by ballot for president and vice-president, one of whom, at least, shall not be an inhabitant of the same state with themselves."

2. "The congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration."

3. "Each state shall appoint, in such manner as the legislature thereof may direct, a number of electors, equal to the whole number of senators and representatives to which the state may be entitled in the congress; but no senator or representative, or person holding an office of trust or profit under the United States, shall be appointed an elector."

4. "Every bill which shall have passed the house of representatives and the senate, shall before it becomes a law, be presented to the president of the United States."

INSERT HERE THE SAME INSTRUC-
TIONS "B" WHICH APPEAR
ABOVE AT THE CORRESPOND-
ING PLACE IN INSERT PART
III (1).

Signature of Applicant: _____

xxxxxxxxx

INSERT PART III (9)

(The following questions shall be answered by the applicant without assistance.)

1. Who coins money, the state or the United States? _____

2. If the president of the United States dies, who succeeds to the presidency?
_____

3. What city is the capital of Alabama?
_____

4. How old must a person be to vote in Alabama? _____

---

INSERT HERE THE SAME INSTRUCTIONS "A" WHICH APPEAR ABOVE AT THE CORRESPONDING PLACE IN INSERT PART III (1).

---

Excerpts from the Constitution

1. "The house of representatives shall be composed of members chosen every second year by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature."

2. "The judicial power of the United States, shall be vested in one supreme court, and in such inferior courts as the congress may from time to time ordain and establish."

3. "Treason against the United States, shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort."

4. "All legislative powers herein granted shall be vested in a congress of the United States, which shall consist of a senate and house of representatives."

---

INSERT HERE THE SAME INSTRUCTIONS "B" WHICH APPEAR ABOVE AT THE CORRESPONDING PLACE IN INSERT PART III (1).

_____
_____

Signature of Applicant: _____

xxxxxxxxx

INSERT PART III (10)

(The following questions shall be answered by the applicant without assistance.)

1. What is the name of the president of the United States? _____

2. To what national lawmaking body does each state send senators and representatives? _____

3. How many stars are there in the United States Flag? _____

4. In what town or city is the courthouse located in this county? _____

---

INSERT HERE THE SAME INSTRUCTIONS "A" WHICH APPEAR ABOVE AT THE CORRESPONDING PLACE IN INSERT PART III (1).

---

Excerpts from the Constitution

1. "Every bill which shall have passed the house of representatives and, the senate, shall, before it becomes a law, be presented to the president of the United States."

2. "The senators and representatives before mentioned, and the members of the several state legislatures, and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this constitution; but no religious tests shall ever be required as a qualification to any office or public trust under the United States."

3. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

4. "Treason against the United States, shall consist only in levying war against them, or in adhering to their enemies, giving them aid and comfort."

---

INSERT HERE THE SAME INSTRUCTIONS "B" WHICH APPEAR ABOVE AT THE CORRESPONDING PLACE IN INSERT PART III (1).

---

Signature of Applicant: _____

xxxxxxxxx

### INSERT PART III (11)

(The following questions shall be answered by the applicant without assistance.)

1. What is the name of the governor of Alabama? _____

2. Of what political party is the president of the United States a member?

---

3. Are post offices operated by the state or federal government? _____

4. What is the chief executive of Alabama called? _____

---

INSERT HERE THE SAME INSTRUCTIONS "A" WHICH APPEAR ABOVE AT THE CORRESPONDING PLACE IN INSERT PART III (1).

---

### Excerpts from the Constitution

1. "The person having the greatest number of votes as vice-president, shall be the vice-president, if such number be a majority of the whole number of electors appointed, and if no person have a majority, then from the two highest numbers on the list, the senate shall choose the vice-president; a quorum for the purpose shall consist of two-thirds of the whole number of senators, and a majority of the whole number shall be necessary to a choice."

2. "The senators and representatives before mentioned, and the members of the several state legislatures, and all executive and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation, to support this constitution."

3. "The powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."

4. "Representatives shall be apportioned among the several states according to their respective numbers, counting the whole number of persons in each state, excluding Indians not taxed."

---

INSERT HERE THE SAME INSTRUCTIONS "B" WHICH APPEAR ABOVE AT THE CORRESPONDING PLACE IN INSERT PART III (1).

---

Signature of Applicant: _____

xxxxxxxxx

### INSERT PART III (12)

(The following questions shall be answered by the applicant without assistance.)

1. Name one United States senator from Alabama. _____

2. When residents of a city elect their officials, the voting is called a municipal election. (True or false) _____

3. Name the two major political parties in the United States.

---

4. What is the chief executive of the United States called? _____

---

INSERT HERE THE SAME INSTRUCTIONS "A" WHICH APPEAR ABOVE AT THE CORRESPONDING PLACE IN INSERT PART III (1).

---

### Excerpts from the Constitution

1. "The times, places, and manner of holding elections for senators and representatives, shall be prescribed in each

state by the legislature thereof; but the congress may at any time by law make or alter such regulations, except as to the places of choosing senators."

2. "All bills for raising revenue shall originate in the house of representatives; but the senate may propose or concur with amendments as on other bills."

3. "The house of representatives shall be composed of members chosen every second year by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature."

4. "Each state shall appoint, in such manner as the legislature thereof may direct, a number of electors, equal to the whole number of senators and representatives to which the state may be entitled in the congress; but no senator or representative, or person holding an office of trust or profit under the United States, shall be appointed an elector."

INSERT HERE THE SAME INSTRUCTIONS "B" WHICH APPEAR ABOVE AT THE CORRESPONDING PLACE IN INSERT PART III (1).

Signature of Applicant: _____

xxxxxxxxx

One of the foregoing forms of Insert Part III shall be used each month, the same form being used for all persons who apply for registration during the same month. During the following month a different form shall be used in like manner.

IT IS FURTHER ORDERED that the Supreme Court of Alabama have and retain the right and authority to amend, change, and alter said questionnaire and oath when deemed by the Court expedient to do so.

IT IS FURTHER ORDERED that this Supplemental Order be spread upon the Minutes of this Court and that a copy of this Order be filed with the Secretary of State of the State of Alabama.

Promulgated and Adopted this the 14th day of January, 1964.

J. ED. LIVINGSTON
Chief Justice

THOMAS S. LAWSON

ROBERT T. SIMPSON

JOHN L. GOODWYN

PELHAM J. MERRILL

JAMES S. COLEMAN, JR.

ROBERT B. HARWOOD
Associate Justices.