**Muffin MILES et al., Plaintiffs,**

**United States of America, Plaintiff and Amicus Curiae,**

**v.**

**Robert DICKSON et al., Defendants.**

**Civ. A. No. 2326–N.**

United States District Court
M. D. Alabama, N. D.
June 15, 1966.

Vernon Z. Crawford, Mobile, Ala., Morton Stavis (Stavis, Richardson, Koenigsberg & Rossmoore), Newark, N. J., William M. Kunstler and Arthur Kinoy, New York City, David Einhorn, Passaic, N. J., Benjamin E. Smith, New Orleans, La., and William L. Messing (McLaughlin, Fougner & Messing, New York City, for plaintiffs.

John Doar, Asst. Atty. Gen., Civil Rights Div., U. S. Department of Justice, Washington, D. C., and Ben Hardeman, U. S. Atty., Montgomery, Ala., for the United States, plaintiff and amicus curiae.

John P. Kohn, and Robert Luther Ingalls, Montgomery, Ala., for defendant Robert Dickson, Jr.

Frank H. Hawthorne (Martin, Balch, Bingham, Hawthorne & Williams), Montgomery, Ala., for defendants E. R. and Todd Meadows.

E. A. Stewart (Reeves & Stewart), Selma, Ala., and James Garrett (Rushton, Stakely & Johnston), Montgomery, Ala., for defendant Bess Gardiner Beck.

Frank Riggs, III (Godbold, Hobbs & Copeland), Montgomery, Ala., for defendants E. L. and Mary James.

Evans Hinson (Hinson & Hamilton), Montgomery, Ala., for defendants LaRue (Buster) Haigler and Mack Champion.

J. E. Wilkinson, Jr. (Wilkinson, Wilkinson & Russell), Selma, Ala., for defendant Fred Holladay.

Allen Meadows, pro se.

## ORDER AND JUDGMENT

JOHNSON, Chief Judge.

In this action the plaintiffs seek an injunction against the defendants, individually and collectively, and all persons acting in concert with them and all other landowners in Lowndes County, Alabama, enjoining said defendants, and others as indicated, from threatening, intimidating, or coercing in any manner, economic or otherwise, for the purpose of interfering with the right of plaintiffs, or of any other person, to become registered to vote, and penalizing or punishing any person by economic sanctions, or otherwise, for having registered to vote or attempting to do so. More specifically, plaintiffs ask this Court to enjoin the named defendants from evicting or terminating the tenancy or sharecropping arrangements of the plaintiffs, or any other Negroes in Lowndes County, Alabama, by reason of their registering to vote, and, further, to enjoin the defendants from preventing the plaintiffs, or other Negroes, from returning to their former homes and resuming their tenancies or former sharecropping arrangements.

Shortly after the plaintiffs filed the complaint, this Court, by formal order, directed that the United States appear as a party and as amicus curiae. Pursuant to this order, the United States Department of Justice, acting through its Civil Rights Division, has participated in the taking of the depositions and in the interrogation of the plaintiffs and the defendants.

The case is presented at this time upon the motions of the defendants for summary judgment, filed herein pursuant to the provisions of Rule 56, Federal Rules of Civil Procedure, as follows: On March 30, 1966, by Bess Gardiner Beck; on April 1, 1966, by Robert Dickson, Jr., and Fred Holladay; on April 7, 1966, by E. L. James and Mary James; on April 11, 1966, by Allen Meadows; on May 4, 1966, by Todd Meadows and E. R. Meadows, and on May 11, 1966, by LaRue (Buster) Haigler and Mack Champion.

Upon consideration of these several motions, the pleadings, requests for admissions and responses thereto, affidavits, approximately forty depositions and the summarizations thereof, and the briefs of the parties, this Court concludes that there is no genuine issue between these plaintiffs and the defendants as to any material fact and that each of the defendants as above named is entitled to a judgment as a matter of law.

According to the 1960 United States Bureau of Census, Lowndes County, located in the heart of the Alabama "Black Belt," had a total population of 15,417 Negroes, comprising 80.7% of the total county population. Until the passage of the 1965 Voting Rights Act,[1] no Negroes were registered to vote in the county. In 1961 this contrasted with 117.9% of the eligible white population being registered to vote.[2] This Court judicially knows that after the passage of the 1965 Voting Rights Act the Negroes of Lowndes County were registered at a fast pace and that at the present time the number of Negroes who are registered to vote in the county far exceeds the number of registered whites. During 1965 there were extensive civil rights activities conducted in and around Lowndes County. These activities concerned the right of Negroes to attend schools without discrimination because of their race,[3] the right to protest against alleged grievances without being harassed or intimidated,[4] and the right to serve on juries in the Lowndes County courts free of discrimination because of their race.[5] At no time did the Negroes of Lowndes County, Alabama, seek judicial relief because of their inability to register to vote on account of their race or color.[6] As stated, by December 1965 a significant number of Negroes—percentagewise—in the coun-

1. 79 Stat. 437, 42 U.S.C. § 1973 et seq. (1965).

2. The Report of the United States Commission on Civil Rights, 1961, indicates that this probably resulted from a substantial number of white persons who had died or moved out of the county, but whose names had not been removed from the voting rolls.

3. See this Court's order desegregating the Lowndes County public school system in United States v. Lowndes County Board of Education, et al., Civil Action No. 2328-N, February 10, 1966.

4. McMeans v. Mayor's Court, Fort Deposit, Alabama (M.D.Ala.1965), 247 F. Supp. 606, and Williams v. Wallace, (M.D. Ala.1965), 240 F.Supp. 100.

5. White v. Cook, 251 F.Supp. 401 (M.D. Ala.1966).

6. See the relief and remedies afforded Negroes in this district who did apply for such relief in United States v. Alabama, 7 Race Rel.L.Rep. 1146 (M.D.Ala. 1961) (Bullock County); United States v. State of Alabama, 192 F.Supp. 677 (M.D.Ala.1961), aff'd 304 F.2d 583 (5th Cir.), aff'd per curiam, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112 (1962) (Macon County); United States v. Penton, 212 F. Supp. 193 (M.D.Ala.1962) (Montgomery County); United States v. Parker, 236 F. Supp. 511 (M.D.Ala.1964) (Montgomery County); United States v. Cartwright, 230 F.Supp. 873 (M.D.Ala.1964) (Elmore County).

ty had registered to vote. Most if not all of these plaintiffs were included in that group. In several instances, as reflected by the evidence presented upon this submission, financial arrangements which had been in effect during the past years between some of these plaintiffs and some of the defendants were either terminated or substantially altered. However, there is absolutely no evidence in this case that there was a conspiracy among these defendants, or any concert of action among them, that was designed to intimidate, threaten or coerce, or had the effect of intimidating, threatening, coercing, or attempting to do any of these things to any of these plaintiffs, or any other person, for the purpose of interfering with the right of the plaintiffs, or any other Negroes of Lowndes County, to attempt to register, to register, to attempt to vote, or to vote. Furthermore, this evidence, which is in all material respects undisputed, reflects that there were no threats of coercion and intimidation on the part of these defendants, as individuals, directed toward the plaintiffs or members of their class, for the purpose of interfering with their right or attempts to register to vote. The only evidence of any intimidation which affirmatively appears in the numerous depositions was in the case of defendant Haigler's arrangement with Cato Lee, where there is strong indication that Haigler terminated his financial arrangements with this plaintiff because of his efforts to send his children to formerly white schools.[7] There is, however, no indication that this termination was a result of the efforts of this plaintiff to register to vote or attempt to register to vote. Reliance on this evidence, therefore, will not withstand the defendant's motion in light of the allegations and theories advanced by plaintiff.

This Court is aware that in cases where motive and intent are crucial elements, courts should proceed with caution in granting motions for summary judgment. This is particularly true where the submission of the motion is upon affidavits. In this instance, however, these motions have been submitted upon the depositions of practically all the defendants and the named plaintiffs. Due notice was given as to the time of taking these depositions, all parties were represented by counsel—with the exception of defendant Allen Meadows, who elected to represent himself—and free right of cross-examination was afforded to all the attorneys, including the attorney representing the United States Department of Justice. Therefore, since the plaintiffs have not been deprived of their opportunity to cross-examine any of the defendants, the reasons for not granting the motions for summary judgment that existed in Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); White Motor Company v. United States, 372 U.S. 253, 83 S.Ct. 696, 9 L.Ed.2d 738 (1963); and Loudermilk v. Fidelity & Casualty Company of New York, 199 F.2d 561 (5th Cir. 1952), are not controlling in this case. Plaintiffs' reliance upon their verified complaint in opposition to the defendants' motions, and the other evidence submitted in support thereof, is not sufficient to justify denial of said motions. In this regard, it is important to emphasize that when the defendants filed their motions and filed in support of said motions the evidence as hereinabove enumerated, it became incumbent on the plaintiffs to present material facts showing that there was a genuine issue for trial. Even though counsel for plaintiffs have interrogated by deposition not only the defendants but the plaintiffs as well, they have produced no evidence that raises a genuine issue within the meaning of Rule 56, Federal Rules of Civil Procedure. Norton v. McShane, 332 F.2d 855 (5th Cir. 1964), cert denied, 380 U.S. 981, 85 S.Ct.

---

7. See footnote 3.

1345, 14 L.Ed.2d 274 (1965); Zellner v. Wallace, et al., 233 F.Supp. 874 (M.D. Ala.1964). Indeed, plaintiffs virtually concede in their brief that they have submitted no evidence that raises a genuine issue of fact in this case, but rely solely upon the insufficiency of the defendants' showing and "upon their verified complaint in opposition to defendants' motions." Such reliance will not withstand the showing the defendants make upon this submission. Norton v. McShane, supra; Zellner v. Wallace, supra.

This Court, of course, recognizes the congressional policy as reflected in § 1971, Title 42, United States Code, and also recognizes the judicial interpretations of this statute as reflected in United States v. Beaty, 288 F.2d 653 (6th Cir. 1961); United States v. Board of Education of Greene County, Mississippi, 332 F.2d 40 (5th Cir. 1964); and United States v. Bruce, 353 F.2d 474 (5th Cir. 1965). Applying the principles of this statutory enactment to the facts presented upon this submission, this Court remains firm in its conclusion that there is no genuine issue of fact on the basic question herein involved, that is, whether the financial arrangements between these defendants and plaintiffs, and other members of their class, were terminated or threatened by the defendants with the motive or purpose of interfering with the right of Negroes to register to vote. Accordingly, it is the order, judgment and decree of this Court that each of the motions for summary judgment filed herein pursuant to Rule 56, Federal Rules of Civil Procedure, by or on behalf of Bess Gardiner Beck, Robert Dickson, Jr., Fred Holladay, E. L. James, Mary James, Allen Meadows, Todd Meadows, E. R. Meadows, LaRue (Buster) Haigler, and Mack Champion, be and each is hereby granted.

This Court notes that the only remaining defendant in this case, Ernest Sellar, has not been served. The United States Marshal for this district in his return filed with the Clerk of this Court on January 14, 1966, noted that the summons and complaint were "returned unexecuted" for the reason that Ernest Sellar could not be located. In this connection, it is further ordered that the plaintiffs be and they are hereby granted twenty days from the date of this order to secure service on Ernest Sellar, or to advise the United States Marshal for this district where the said Ernest Sellar may be served; otherwise, the cause will stand dismissed without prejudice as to the defendant Ernest Sellar.

The testimony of the plaintiffs as now presented in several depositions reflects that none, or practically none, of the plaintiffs specifically authorized the filing of this lawsuit, or, as a matter of fact, realized that it had been filed until they were called upon to appear for the purpose of testifying. The Court assumes—and there is a basis for this assumption in the testimony of the plaintiffs—that representatives of certain "civil rights organizations" contacted these plaintiffs, or most of them, during the late fall of 1965, took written statements from some of them, and then proceeded to employ the attorneys who filed this action. This Court, therefore, has serious reservations about taxing the court costs in this proceeding against these plaintiffs and believes, instead, that justice requires the taxation of the costs against the attorneys who filed the case. They may, of course, secure the costs for payment of this proceeding from the organization(s) or representative(s) that did employ them on behalf of these plaintiffs to file and prosecute this action. It is, therefore, the order judgment and decree of this Court that the costs in this proceeding be and they are hereby taxed against Vernon Z. Crawford, 578 Davis Avenue, Mobile, Alabama; Morton Stavis, 744 Broad Street, Newark, New Jersey; William M. Kunstler, 511 Fifth Avenue, New York, New York; Arthur Kinoy, 511 Fifth Avenue, New York,

New York; David Einhorn, 307 Monroe Street, Passaic, New Jersey; and Benjamin E. Smith, Baronne Building, New Orleans, Louisiana, attorneys for the plaintiffs.