Gardenia WHITE et al., Plaintiffs,

United States of America, by Nicholas deB. Katzenbach, Attorney General of the United States, Plaintiff-Intervenor,

v.

Bruce CROOK et al., Defendants.

Civ. A. No. 2263-N

United States District Court
M. D. Alabama, N. D.

Feb. 7, 1966.

Orzell Billingsley, Jr., Birmingham, Ala., Charles Morgan, Jr., Atlanta, Ga., Melvin L. Wulf, Dorothy Kenyon and Pauli Murray, New York City, for plaintiffs.

John Doar, Asst. Atty. Gen., U. S. Dept. of Justice, Washington, D. C., and Ben Hardeman, U. S. Atty., Montgomery, Ala., for plaintiff-intervenor.

Richmond M. Flowers, Atty. Gen., Robert P. Bradley and Leslie Hall, Asst. Attys. Gen., State of Alabama, Montgomery, Ala., for members of the Lowndes County Jury Commission and Mrs. Kelly Coleman, defendants.

Harry Cole, of Ball & Ball, Montgomery, Ala., for all other defendants.

Before RIVES, Circuit Judge, and ALLGOOD and JOHNSON, District Judges.

## PER CURIAM.

This action was instituted as a class action by male and female residents of Lowndes County, Alabama, against the individual members of the jury commission of Lowndes County, Alabama. Subsequently, the plaintiffs amended by adding as defendants other officials of Lowndes County and the State of Alabama, who, according to the amended complaint, performed certain functions in connection with the jury selection and jury use in Lowndes County, Alabama. By the complaint as amended, plaintiffs alleged that the defendants have systematically excluded Negro male citizens and female citizens of both races from jury service in Lowndes County, Alabama. Because of the challenge to the Alabama statute which totally excludes women from jury service, a three-judge district court was designated and convened, pursuant to 28 U.S.C. §§ 2281, 2284, to try this case. Subsequently, the United States moved for leave to intervene pursuant to § 902 of the Civil Rights Act of 1964; this motion was based upon a complaint in intervention and a certification by the Attorney General of the United States that, in his judgment, this case was of general importance.

This case was submitted on the issues made up by the pleadings and proof, and, upon consideration of the evidence, consisting of the oral testimony of several witnesses, together with the exhibits thereto, this Court now proceeds to make and enter in this memorandum opinion, as authorized by Rule 52, Federal Rules

of Civil Procedure, the appropriate findings of fact and conclusions of law.

The plaintiffs, male and female Negro citizens and residents of Lowndes County, Alabama, seek of the defendants, through this Court, as provided under the Constitution and laws of the United States, injunctive relief to remedy alleged conduct of the defendants (including the denial to the plaintiffs of the equal protection of the laws on account of race or color) in violation of the Fourteenth Amendment to the Constitution and 42 U.S.C. § 1981. The plaintiffs bring this action in their own behalf and on behalf of others similarly situated, pursuant to Rule 23(a) (3) of the Federal Rules of Civil Procedure. The plaintiff-intervenor is the United States of America; its standing to intervene is established by 42 U.S.C. § 2000h–2 and by Rule 24(b) of the Federal Rules of Civil Procedure. The defendants are the members and clerk of the jury commission of Lowndes County, Alabama; the judge for the Second Judicial Circuit of Alabama, which includes Lowndes County; the probate judge and the sheriff of Lowndes County; the solicitor and the clerk of the Second Judicial Circuit of Alabama, which includes Lowndes County; the foreman of the grand jury of Lowndes County; and the solicitor of Lowndes County.

By leave of this Court, upon an appropriate petition, the Alabama Circuit Judges Association filed its brief as amicus curiae. The brief filed on behalf of the Alabama Circuit Judges Association concerns itself with the relief sought by the plaintiffs and the plaintiff-intervenor against the defendant circuit judge; the Association emphasizes in its brief that it does not oppose any relief sought other than that sought against the circuit judge for the Second Judicial Circuit of Alabama, which includes Lowndes County.

The procedure for the selection of jurors in Alabama is controlled by statute.[1] Each county in Alabama has a jury commission composed of three members appointed by the Governor.[2] These commissioners, in order to be qualified, must be electors of the county, reputed for their fairness, impartiality, integrity and good judgment; the commissioners so appointed serve for the tenure of the Governor who appoints them.[3] The jury commissioners are required to place on the jury roll "the names of all male citizens of the county who are generally reputed to be honest and intelligent men and are esteemed in the community for their integrity, good character and sound judgment."[4] The clerk of the jury commission is required by law to "obtain the name of every male citizen of the county over twenty-one and under sixty-five years of age and their occupation, place of residence and place of business * * *."[5] The jury commission is required to maintain a jury roll containing the name of "every male citizen living in the county who possessed the qualifications herein prescribed and who is not exempted by law from serving on juries."[6] As a part of the procedural requirements the names of the persons on the jury roll must also be printed on separate cards, which are placed in a jury box. It is the duty of the commission to see that the name of each person possessing the qualifications to serve as a juror and not exempted by law from jury duty "is placed on the jury roll and in the jury box."[7] The Alabama law

---

1. These statutes are codified in the Code of Alabama, Recompiled 1958, Title 30. All statutory references to the qualifications of and to the procedure for the selection of jurors in Alabama as set forth in this opinion will be to Title 30, Code of Alabama, Recompiled 1958.

2. With some exceptions provided by local Acts or Acts of local application.

3. Sections 8, 9 and 10.

4. Section 21.

5. Section 18.

6. Section 20. To the extent that this section uses the word "every" it is a permissive as opposed to a mandatory requirement. Fikes v. State, 263 Ala. 89, 81 So. 2d 303.

7. Section 24.

further requires the jury commission and its clerk to scan the registration lists, the list returned to the tax assessor, any city directories and telephone directories, and any and every other source of information, and to visit every precinct in the county at least once a year.[8]

When jurors are required for a court session, the presiding judge draws from the jury box the names of the individuals to serve as jurors during the term in question. These jurors may be either petit jurors or grand jurors as the situation requires. The names so drawn are sent to the clerk of the court, and the clerk prepares a venire; the venire containing these names is sent to the sheriff who summons the persons listed to appear and serve.[9] The presiding judge has the authority to pass upon claims for exemptions, excuses and qualifications of those individuals who have been summoned to appear and serve as jurors.[10] Either party in civil and criminal cases has a right to examine jurors as to their qualifications, interests, or any bias that would affect the trial of the case. In civil actions each party has a certain number of preemptory challenges, and in criminal cases the struck jury method is the exclusive means of selecting juries.

The 1960 census reflects that the total population of Lowndes County was 15,417 and that Negroes comprised 80.7% of the total county population and 72.0% of the adult male population. The white males between the ages of 21 to 65 totaled 738, and the nonwhite males between the ages of 21 to 65 totaled 1,798. The white females between the ages of 21 to 65 totaled 789, and the nonwhite females between the ages of 21 to 65 totaled 2,278.[11] The evidence in this case reflects that before each term of court the presiding judge of the Second Judicial Circuit would draw at random from the jury box a sufficient number of cards (usually 110) to provide jurors for the next term of court to be conducted in Lowndes

County. When the number of cards in the jury box became depleted to the extent that the judge could not make a complete draw, he notified the clerk of the jury commission, who informed the commissioners that the box required refilling. At times the jury commissioners refilled the box or added names on their own initiative; when they filled the jury box, they would put approximately 250 names in it. The testimony reflected that the judge found it necessary to suggest that the jury box be refilled "probably once a year." The Lowndes County jury commissioners, in selecting persons they considered to be qualified for jury service, used as their primary source the Lowndes County voting lists on which no Negroes were named. The other source (personal knowledge) accounted for the names of seven Negroes listed on the Lowndes County jury roll in the twelve-year period from 1953 until this action was commenced. From 1953 to the time this suit was instituted, Negroes comprised little more than 1% of the persons selected by the commissioners as eligible and qualified for jury service in Lowndes County, Alabama. There was no conflict in the evidence to the effect that there were a substantial number of Negro citizens residing in Lowndes County who were qualified for jury services under Alabama law. As a matter of fact, it was stipulated between counsel that there were qualified Negroes in Lowndes County whose names had not been placed on the jury rolls or in the jury box by the jury commission. The actual procedure followed by the jury commission of Lowndes County, Alabama, in replenishing the jury box was for the commission to borrow the qualified voter list from the county probate judge, to meet, and during the course of the meeting have one of the commissioners read the names of all males on the qualified voter list, most of whom were known to one or more of the com-

8.  Section 24.

9.  Section 30.

10.  Sections 4 and 5.

11.  United States Bureau of Census. United States Census of Population: 1960. General Population Characteristics, Alabama.

missioners. As the list was read, the persons whose names appeared thereon were either summarily approved or rejected as prospective jurors. Discussion of the qualifications was generally unnecessary. It is especially significant that there were no Negroes registered to vote in Lowndes County prior to March 1, 1965. Literacy was not considered by the commissioners as an absolute prerequisite in order for a person to be deemed by them qualified for jury service. As a matter of fact, the jury commissioners have not used any method for testing a person's ability to read and write. As the names were read from the qualified voter list, those approved by the commissioners were recorded on jury cards. The cards were placed in the jury box for use by the presiding judge. The extent to which the qualified voter lists were used by the commissioners is revealed by comparing the contemporaneous voting lists with the venire lists from 1953 to the time this case was tried. This analysis reflects that 98.0% of the names on the venires of prospective jurors appeared on the contemporaneous voting lists. It is especially significant that there were no Negroes registered to vote in Lowndes County prior to March 1, 1965; the voting lists for Lowndes County, Alabama, during this time included the names of approximately 1200 white male citizens. Thus, no Negroes' names appeared on the jury commissioners' primary source for finding and selecting prospective jurors. The evidence further reflected that the commissioners made some efforts to secure the names of persons considered qualified as potential jurors whose names were not on the qualified voter lists. These efforts resulted in the names of seven Negroes being placed in the jury box from 1953 until August 25, 1965, the date this action was commenced. During this period—approximately twelve years —these seven Negroes were drawn for jury service a total of nineteen times. After the complaint in this action was filed, the jury commission met to replenish the jury box and at that time the names of 19 Negroes were placed in the box. The evidence reflected that the

jury commissioners considered this to be a sufficient number to satisfy the requirements of the law. No Negro has ever served on a civil or criminal petit jury in Lowndes County, Alabama.

In addition to the above procedure, which resulted, in the opinion of this Court, in an extremely aggravated case of systematic exclusion by reason of race, the commissioners followed a procedure which restricted the number of qualified white persons whose names were placed in the jury box. An analysis of the jury records as offered and received in evidence in this case reflects that a very limited number of persons has constituted the core of the county jury system in Lowndes County, Alabama, and that the names of this extremely limited group have been repeatedly circulated through the jury box. As a matter of fact, the names of only 670 persons have been on cards in the box since 1953. Of these 670 individuals, 211 have had their names in the box six or more times, and some as many as fifteen or sixteen times. These 211 persons collectively account for 66.5% of the total of 2,748 names, including repeats that have appeared on the venire lists in Lowndes County, Alabama, from 1953 to the present time. Fifty-seven of these persons were called for jury service three successive terms. Seven of them were called for jury service four successive terms.

The procedures as outlined above, adopted and followed by the jury commissioners in Lowndes County, Alabama, since 1953, have resulted in jury service in that county being limited to a small number of adult, white male citizens, with Negro male citizens and female citizens of both races being systematically excluded either by practice or, in the case of the women, by statute.

I.

THE SYSTEMATIC EXCLUSION OF NEGROES BY RACE

■ . In this civil action the plaintiffs assert the right of Negroes, collectively, to be free from racial discrimination in jury selection procedures. They invoke

the constitutional principle that systematic exclusion for the purposeful discrimination against Negroes in selecting persons qualified for jury service involves arbitrary state action directly contrary to, and in violation of, the Equal Protection and Due Process Clauses of the Fourteenth Amendment. The rule of law that Negroes may not systematically be excluded from the opportunity to serve on civil and criminal juries, grand and petit, in the state and federal courts has several basic aspects. The qualified Negro citizen has a right not to be denied participation in the democratic institution by which all citizens become most directly involved in the administration of justice. When Negroes are excluded from jury service because of their color, the action of the state "is practically a brand upon them, affixed by the law, an assertion of their inferiority * * *." Strauder v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664. As the Supreme Court stated in Strauder v. State of West Virginia:

> "The very idea of a jury is that it is a body of men composed of the peers or equals of the person whose rights it is selected or summoned to determine * * *."

■ State laws governing the qualifications of voters are also subject to the limitations of the Equal Protection Clause. Carrington v. Rash, 1965, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675.

■ The evidence in this case as above outlined, without any serious dispute, clearly reflects wide disproportions between the number of qualified Negro citizens in Lowndes County and the number of names of Negroes placed on the jury roll and in the jury box by the defendant jury commissioners and the defendant jury commission clerk. This proof, without more, requires an inference of systematic exclusion on racial grounds; this inference, in the absence of some satisfactory explanation, is sufficient to show that the male plaintiffs and the members of the class they represent have been denied the constitutional rights they assert. Reece v. State of Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77; Hernandez v. State of Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76; Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; United States ex rel. Seals v. Wiman, 5 Cir., 304 F.2d 53; United States ex rel. Goldsby v. Harpole, 5 Cir., 263 F.2d 71. See also the recent opinion and order of the United States District Court for the Middle District of Alabama in Mitchell et al., Plaintiffs, United States of America, Plaintiff and Amicus Curiae v. Johnson et al., Defendants, January 18, 1966, 250 F.Supp. 117.

■ Not only did the defendant jury commissioners and the defendant jury commission clerk fail to offer some satisfactory explanation to rebut this inference, but their testimony clearly reflected that they pursued a course of conduct in the administration of their office which was designed to discriminate and had the effect of discriminating in the selection of jurors in Lowndes County, Alabama, on racial grounds. Moreover, the establishment and use of a relatively small number of white male citizens' names in the jury box as a "recirculating jury pool" not only made possible the exclusion of qualified Negroes from jury duty in a county in the Black Belt section of Alabama where the total Negro population is 80.7% of the total county population, but also resulted in magnifying the power vested in the relatively small group of Lowndes County white citizens as opposed to the absolute lack of power growing out of the right to serve as grand and/or petit jurors by members of the Negro race. It must be concluded, therefore, that in their action, conduct, and procedures followed, the defendant commissioners and the defendant jury clerk in Lowndes County, Alabama, not only failed to adhere to the laws of the State of Alabama relating to the selection of qualified jurors, but clearly violated the Equal Protection and Due Process Clauses of the Fourteenth

Amendment which make unlawful the systematic exclusion of Negroes from jury service because of their race. This Court has the power and duty, therefore, to fashion a decree granting such relief as will ensure the nondiscriminatory functioning of the jury system in Lowndes County, Alabama. It is recognized that the mere failure on the part of the jury commission to adhere to the Alabama statutes does not in and of itself constitute any violation of the plaintiffs' federally-guaranteed constitutional rights. However, the purpose of the Alabama statutes is to ensure at least a reasonable approximation to the requirements that jury venires include all qualified persons and, hence, represent a cross-section of the community, with no significant groups being excluded without justifiable reasons; therefore, the procedures outlined by the Alabama statutes can and do serve in this case as a standard by which the actions of the jury commissioners may be judged. Their failure to adhere, to any substantial degree, to the requirements of Alabama law in their selection procedures explains to some extent the imbalance in the jury rolls in Lowndes County, Alabama. Had the clerk of the jury commission obtained the names of all male citizens in the county between the ages of 21 to 65, as required by the Alabama statute, together with their occupations, residences and places of business, and turned this information over to the members of the jury commission, the commission, by using this list and other information collected from the voter registration rolls, the city directories and the telephone directories, and by visiting the precincts in the county as they are required by the Alabama statute to do, could very easily have made a roll containing the names of citizens of Lowndes County which would have met the Alabama statutory requirements. The sole purpose of these requirements is to ensure that the jury commissioners will have as complete a list as possible of names, compiled on an objective basis, from which to select qualified jurors. The commissioners in this case, all white, relied almost entirely on the qualified voter list of Lowndes County, on which there were no Negroes listed prior to March 1, 1965. This means, very simply, that the jury commissioners of Lowndes County have failed to perform the duty required of them by the law of Alabama which requires that they familiarize themselves with the qualifications of eligible citizens of the county without regard to race, and that their failure to comply with these statutes, among other things hereinabove set forth, has resulted in gross systematic exclusion of members of the Negro race from jury duty in Lowndes County. Cassel v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839; Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559; Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84.

Unconstitutional jury selection methods are usually brought before courts prior to trial in order to quash a particular panel or venire in a particular case. This case is one of the first civil actions brought to remedy systematic exclusion of Negroes from jury service generally.[12] There is no question that under 42 U.S.C. § 1983 these male plaintiffs under the evidence in this case are entitled to the relief they seek and are entitled to have the defendants adopt procedures that will ensure that they and all other qualified members of their class in Lowndes County, Alabama, serve on juries.[13]

12. See Mitchell et al., Plaintiffs, United States of America, Plaintiff and Amicus Curiae v. Johnson et al., Defendants, MD Ala., January 18, 1966, 250 F.Supp. 117.

13. An action such as the plaintiffs have brought here was suggested by Mr. Justice Jackson in his dissent in Cassell v. State of Texas, supra, as a "direct and effective" means to eliminate unconstitutional discrimination.

## II.

### STATUTORY EXCLUSION OF WOMEN FROM JURY SERVICE IN ALABAMA

■■ As stated earlier in this opinion, jury service on the part of the citizens of the United States is considered under our law in this country as one of the basic rights and obligations of citizenship. The women plaintiffs on behalf of themselves and other women similarly situated contend very forcefully that the Alabama statute that bars their exercise of this basic right is unconstitutional.[14] This attack on Alabama's complete exclusion of women from jury service is based on the Equal Protection Clause of the Fourteenth Amendment. The argument that the Fourteenth Amendment was not historically intended to require the states to make women eligible for jury service reflects a misconception of the function of the Constitution and this Court's obligation in interpreting it. The Constitution of the United States must be read as embodying general principles meant to govern society and the institutions of government as they evolve through time. It is therefore this Court's function to apply the Constitution as a living document to the legal cases and controversies of contemporary society. When such an application to the facts in this case is made, the conclusion is inescapable that the complete exclusion of women from jury service in Alabama is arbitrary.

■ Jury service is a form of participation in the processes of government, a responsibility and a right that should be shared by all citizens, regardless of sex. The Alabama statute that denies women the right to serve on juries in the State of Alabama therefore violates that provision of the Fourteenth Amendment to the Constitution of the United States that forbids any state to "deny to any person within its jurisdiction the equal protection of the laws." The plain effect of this constitutional provision is to prohibit prejudicial disparities before the law. This means prejudicial disparities for all citizens—including women. See Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043; Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118; see also Hernandez v. State of Texas, supra.

The courts have not heretofore been called on to decide a case presenting the constitutional validity of a state's complete exclusion of women from service as jurors. Hoyt v. State of Florida, supra, and Fay v. People of State of New York, supra, were concerned with systems of jury selection under which service by women was voluntary. Significantly, in Hoyt v. State of Florida, supra, the Supreme Court's opinion concluded as follows:

"Finding no substantial evidence whatever in this record that Florida has arbitrarily undertaken to exclude women from jury service, a showing which it was incumbent on appellant to make * * *, we must sustain the judgment of the Supreme Court of Florida. * * *" 368 U.S. 57, 69, 82 S.Ct. 159, 166.

Further, the Chief Justice and Justices Black and Douglas assigned as their sole reason for concurring that. "We cannot say from this record that Florida is not making a good faith effort to have women perform jury duty without discrim-

---

14. Title 30, § 21, Code of Alabama, Recompiled 1958, is the Alabama statute that restricts jury service to male citizens. That statute in pertinent part states as follows: "§ 21. *Qualifications of persons on jury roll.*—The jury commission shall place on the jury roll and in the jury box the names of all male citizens of the county * * *." Only three states—Alabama, Mississippi and South Carolina—totally bar women from jury service. All others either treat women and men on the same basis or provide some form of voluntary service for women. The prohibition against women serving on juries in Alabama does not apply to federal juries by reason of the Civil Rights Act of 1957, 28 U.S.C. § 1861—that Act deleting that portion of the law that disqualified persons for service on federal juries who are incompetent to serve on a grand or petit jury by the law of the state in which the federal district court is held.

ination on the ground of sex." 368 U.S. at 69, 82 S.Ct. at 167. Moreover, the *Hoyt* and *Fay* cases presented challenges from a viewpoint entirely different from the present case. In those cases the parties defendant challenged the composition of the juries because of the systematic exclusion of women. In this case it is the women themselves who assert their right to serve as jurors, or, more accurately, their right not to be excluded from jury service solely because of their sex.

Women are allowed to serve on juries in the federal courts and in the courts of forty-seven states. Only in three—Alabama, Mississippi and South Carolina—are women completely excluded from jury service. The time must come when a state's complete exclusion of women from jury service is recognized as so arbitrary and unreasonable as to be unconstitutional. As to Alabama, we can see no reason for not recognizing that fact at the present time.

■ Even though this Court finds and holds that the exclusion of women from jury service in Alabama by a statutory provision is arbitrary in view of modern political, social and economic conditions, this Court is fully aware that the Alabama statute has been regarded and relied upon as constitutional by all alike. This Court believes public policy is best served by holding that that part of the decision in this case to the effect that Alabama's prohibition of jury service for women is unconstitutional should be prospective in its application, and, for that reason, should have no retroactive effect. See generally, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed. 2d 601, and Tehan, Sheriff, etc. v. United States ex rel. Shott, January 19, 1966, 86 S.Ct. 459. However, to eliminate any possible misunderstanding, this Court specifically declares that, for the future, commencing not later than a time designated, women have a right not to be excluded as a class from jury service in Alabama courts.

## III.

## RELIEF

■ The relief to be afforded in this case will involve not only the issuance of a prohibitory injunction, but an injunction requiring immediate affirmative action by the jury commissioners by their emptying the Lowndes County jury box and abandoning the present Lowndes County jury roll without any further use of either, and by their compiling a jury roll and refilling the jury box in strict accordance with the law of Alabama and the constitutional principles herein set forth.[15] This Court recognizes that it does not sit to enforce the law of the State of Alabama, but where the constitutional guaranties as set forth by the Constitution of the United States have been violated to the extent that the defendants have violated them in this case, it is appropriate, in fashioning relief from these violations, for the Court, to the extent possible, to let its decree recognize the validity of the law of the State of Alabama as much as is practicable and consistent with the object of eliminating discrimination in the Lowndes County jury selection system. In remedying the wrong found by this Court to exist concerning the exclusion of Negroes from jury service in Lowndes County, Alabama, the defendants are cautioned that if they apply Alabama's qualifications for jury service—particularly that qualification relating to good character and sound judgment and that qualification concerning the requirement that prospective jurors be able to read English—these qualification requirements must be imposed fairly and objectively and administered to all regardless of race, in a nondiscriminatory manner. This Court recognizes the practical difficulties which will be faced by the jury commission in putting into the jury box the name of every qualified juror on a comprehensive

---

15. The use of mandatory injunctions, where necessary to afford relief, as in this case, has been approved by the United States Court of Appeals for the Fifth Circuit in State of Alabama v. United States (1962), 304 F.2d 583.

list to be prepared by the jury commission clerk, and further recognizes that the law of Alabama, as stated in Fikes v. State, supra, does not require, literally, that *every* qualified person's name be placed on the rolls or in the box. However, the law does require that the jury commissioners not place so few names in the jury box as not to obtain a full cross-section of the county. In this connection, there should be no less than 1000 names placed in the jury box in Lowndes County, Alabama, at each re-filling.

Failure on the part of the defendant jury commissioners and the defendant jury commission clerk to comply immediately and in good faith with the requirements of this opinion and order will necessitate the appointment by this Court of a master or panel of masters to recompile the jury roll and to empty and refill the Lowndes County jury box. This action, if it becomes necessary, would be only for the purpose of having the requirements of the law fulfilled. Since the defendant jury commissioners and the defendant jury commission clerk are already charged with this duty—by both the Alabama law and the requirements of the United States Constitution—such action by this Court should not be necessary.

■ As to that part of this Court's order relating to jury service in Alabama for women, we believe there should be some reasonable delay in its going into effect. Even though it is clear—and we do here unequivocally declare—that women in Alabama have a constitutional right not to be arbitrarily excluded from jury service, it is the feeling of the members of this Court that the several practical problems, including a determination of whether service is to be compulsory or voluntary and the availability of physi-

cal facilities, require that the State of Alabama be given a reasonable time to comply with that part of this Court's decree.[16] In this connection, since the next regular session of the Alabama Legislature is not scheduled until January, 1967, the defendants should be allowed until June 1, 1967, considered by this Court to be a reasonable period prior to the time the defendants should be required to include women as jurors.

## IV.

### THE DEFENDANTS OTHER THAN THE MEMBERS OF THE JURY COMMISSION AND JURY COMMISSION CLERK

■ As stated earlier in this memorandum opinion, the complaint was amended to add defendants County Solicitor Perdue, Probate Judge Hammonds, Sheriff Ryals, Grand Jury Foreman Harrell, Circuit Judge Thagard, Circuit Solicitor Gamble and Circuit Clerk Marlette. The evident purpose of the amended complaint was to secure a restraining order prohibiting these designated officials from proceeding with a term of court for criminal cases which was then pending. This Court, by formal order made and entered in this case on September 27, 1965, denied the motion for a temporary restraining order. There was no evidence presented in this case that reflected any misconduct on the part of these defendants. More particularly, there was no evidence that any of these defendants have engaged in any acts or practices designed to have or having the effect of systematically excluding Negroes from jury service in Lowndes County, Alabama, by reason of their race. As a matter of fact, there is no specific relief requested against any of these defendants except Circuit Judge Thagard. As to Circuit Judge Thagard the evidence taken upon the trial of this case reflects that

16. It is not uncommon for courts, when declaring constitutional rights not previously recognized and declared, to delay for a reasonable time, in consideration of practical problems incident to an implementation of those rights, the actual exercise of the newly declared rights. Brown v. Board of Education, 347 U.S. 483, 74 S. Ct. 686, 98 L.Ed. 873, and 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; Sims v. Frink, D.C., 208 F.Supp. 431, aff'd Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506.

he draws names from the jury box when necessary prior to holding a term of court in Lowndes County, Alabama, and gives the names to the clerk, who makes up the jury venire. When the jury box has an insufficient number of cards in it, the judge notifies the clerk, who, in turn, notifies the jury commissioners that the box needs refilling. There is no evidence whatsoever that any discrimination has been practiced by Judge Thagard either in his duty of drawing the names of jurors from the box or of excusing jurors from service by reason of their race or color after they report. This Court concludes, therefore, that this action should be dismissed as to the defendants County Solicitor Perdue, Probate Judge Hammonds, Sheriff Ryals, Grand Jury Foreman Harrell, Circuit Judge Thagard, Circuit Solicitor Gamble and Circuit Clerk Marlette. This order of dismissal will be without prejudice to any one or all of them being brought back in the case if, subsequent to the issuance of the decree in this case, it becomes necessary or appropriate to do so in order to effectuate the decree or to preserve the jurisdiction of this Court.

Jurisdiction of all phases of this case is expressly reserved. A formal order will be entered in accordance with the foregoing opinion.