Mrs. Sylvester SMITH, Individually and on Behalf of her minor children, Ida Elizabeth Smith, Ernestine Smith, Willie Louis Smith and Willie James Smith and on Behalf of all other mothers of needy, dependent children similarly situated, Plaintiffs,

v.

Ruben K. KING, Commissioner of the State Department of Pensions and Security, State of Alabama, Lurleen Burns Wallace, Chairman, State Board of Pensions and Security, State of Alabama, James Record, Mrs. Mary Waite, William M. Clarke, Temple Coley, Grant Whiddon, Mrs. Mary Ella Reavis, Members of the State Board of Pensions and Security, State of Alabama, Mrs. Clinton S. Wilkinson, Sr., Director, Dallas County Department of Pensions and Security, Individuallly and in their official capacities, Defendants.

Civ. A. No. 2495–N.

United States District Court
M. D. Alabama, N. D.

Nov. 8, 1967.

Probable Jurisdiction Noted
Jan. 22, 1968.
See 88 S.Ct. 821.

**32**

Charles S. Conley, Montgomery, Ala., Alvin J. Bronstein, Jackson, Miss., and Martin Garbus, New York City, for plaintiffs.

MacDonald Gallion, Atty. Gen., and Mary Lee Stapp and Carol F. Miller, Asst. Attys. Gen., State of Alabama, Montgomery, Ala., for defendants.

Before GODBOLD, Circuit Judge, and JOHNSON and PITTMAN, District Judges.

PER CURIAM:

I.

This is an action for declaratory and injunctive relief filed pursuant to 42 U. S.C. § 1983.[1] The "rights, privileges, or immunities" sought to be redressed are those secured by the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States and by the Social Security Act, 42 U.S.C. §§ 601–609. The declaratory judgment aspect of the action is pursuant to 28 U.S.C. § 2201.

Plaintiff Sylvester Smith, a citizen of the United States, the State of Alabama and the County of Dallas, and the mother of plaintiffs Ida Elizabeth Smith, aged 14; Ernestine Smith, aged 12; Willie Louis Smith, aged 11, and Willie James Smith, aged 9, brings this action in her own behalf, in behalf of said minor children and, pursuant to Rule 23(a) and (b) (2) of the Federal Rules of Civil Procedure, in behalf of all other persons similarly situated.

The defendants are the chairman, members and officials of the Alabama State Board of Pensions and Security, responsible, in conference with the Commissioner, under the law of Alabama for the adoption of policies, rules and regulations of the Alabama State Department of Pensions and Security. Code of Alabama, Title 49, § 17. The Commissioner of the Alabama Department of Pensions and Security has a statutory responsibility for the adoption of the regulations designed to effect the policy and for exercising the executive and administrative duties of the Alabama State Department of Pensions and Security. Code of Alabama, Title 49, § 17. The defendant Mrs.

---

1. "§ *1983. Civil action for deprivation of rights*

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

Clinton S. Wilkinson, Sr., is Director of the Dallas County Department of Pensions and Security and is responsible under the law of Alabama (Title 49, § 17) for enforcing the policies and regulations of the Alabama State Department of Pensions and Security in the County of Dallas.

Since the plaintiffs seek injunctive relief restraining the defendant officers of the State of Alabama from the enforcement, operation and execution of a statewide regulation set forth in the Alabama Manual for Administration of Public Assistance, Part I, Chapter II, Section VI, Par. V (entitled "Child Ineligible if There Is a Father or Mother Substitute") and commonly referred to as the "substitute father" regulation,[2] on the ground of the unconstitutionality of said regulation when measured by the requirements of the Constitution of the United States, a three-judge court was convened, pursuant to 28 U.S.C. § 2281, for hearing and determining this action. Jurisdiction is conferred on the court by 28 U.S.C. § 1343(3) and (4).

## II.

By stipulation of the parties made and filed with the Clerk of this Court, the action is submitted on depositions, numerous documents and exhibits, and the briefs and arguments of the parties.

For several years prior to October 1, 1966, plaintiff Sylvester Smith and her children had been recipients of financial assistance under the Aid to Dependent Children program of the State of Alabama, a public assistance program authorized by the Code of Alabama, Title 49, § 17 and 42 U.S.C. §§ 601–609. By notice dated October 11, 1966, plaintiff Smith and her children were removed, retroactively to September 30, 1966, from the list of persons eligible to receive such aid; this action was taken by the Dallas County, Alabama, welfare authorities

2. "*V. Child Ineligible if There Is a Father or Mother Substitute*
"*A. Father Substitute:* An able-bodied man, married or single, is considered a substitute father of *all* the children of the applicant/recipient mother living in her home, whether they are his or not, if: (1) he lives in the home with the child's natural or adoptive mother for the purpose of cohabitation; or (2) though not living in the home regularly, he visits frequently for the purpose of cohabiting with the child's natural or adoptive mother; or (3) he does not frequent the home but cohabits with the child's natural or adoptive mother elsewhere. Pregnancy or a baby six months or under is prima facie evidence of a substitute father as indicated above.
"When there appears to be a substitute father, disapprove an application or terminate aid unless the mother establishes that one of the following situations exists: (1) she and/or the substitute father meets the criteria of disability as described under 'Physical or Mental Incapacity'; (2) the substitute father is no longer living in the home or visiting the home for the purpose of cohabiting with her; or (3) the relationship is broken between the mother and a man who has not been living in the home or frequenting the home.

"Evidence showing that the relationship has been discontinued includes proof such as: the father has married another woman; or he is in a public institution; or, if he has been living in the home, he is now living at another address; or a notarized statement by the *mother and substitute father* that they have discontinued their relationship. This evidence must be corroborated by at least two acceptable references in a position to know. Examples of acceptable references are: law-enforcement officials; ministers; neighbors; grocers. If needed, the mother will be given 30 days to present her evidence before her application is disapproved or her case closed unless additional time is needed. If additional time is needed, another 30 days may be allowed. In no instance shall more than 60 days be allowed. Although the burden of proof rests with the mother, the worker will assist in any way possible to help the mother establish that she has broken a relationship. Also, before rejecting an application or closing a case, the worker will talk with the mother about reasons for the agency's action and about her right to reapply at any time that she does break the relationship. If the family is otherwise eligible, the case should be recertified for aid immediately.

pursuant to the "substitute father" regulation. In all respects, except for the "substitute father" regulation promulgated and enforced by the defendants, plaintiffs and the members of their class are eligible for and entitled to receive financial assistance under the Aid to Dependent Children program.

The defendants, in order to receive federal funds for the Aid to Dependent Children program conducted for the State of Alabama, have been required by the provisions of 42 U.S.C. §§ 601–609 to formulate a "State Plan" for aid to dependent children consistent with the provisions of the Constitution of the United States and the provisions of 42 U.S.C. § 601 et seq. Under the terms of the Code of Alabama, Title 49, § 17(7), the defendants are also required to "Act as the agent of the federal government * * * in the administration of any federal funds granted to the state to aid in the furtherance of any of the functions of the state department * * *" and otherwise to act as the agents of the federal government in the furtherance of the objectives of the Aid to Dependent Children program. With this arrangement, federal funds are granted under the provisions of 42 U.S.C. § 601 et seq., and these funds constitute the major share of Aid to Dependent Children grants in the State of Alabama.[3]

Under the terms of 42 U.S.C. § 606(a), a "dependent child" is defined as:

"* * * a needy child (1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or neice, in a place of residence maintained by one or more of such relatives as his or their own home, and (2) who is (A) under the age of eighteen or (B) under the age of twenty-one and (as determined by the State in accordance with standards prescribed by the Secretary) a student regularly attending a school, college, or university, its equivalent, or regularly attending a course of vocational or technical training designed to fit him for gainful employment;"

Three of the plaintiff children have not since 1955 received parental support or care from their father, who has been dead since that year. The fourth plaintiff child has not for several years received parental support or care from his father, who has been continuously absent for many years. All the plaintiff children are living in the home of their mother, plaintiff Sylvester Smith, and all are under the age of 18 and are not receiving any other type of public assistance. The sole income of plaintiff Smith and her children is the sum of $16 per week, which sum represents wages paid to her for working as a waitress; said income is below the financial standards promulgated by the defendants as necessary for a subsistence compatible with decency and health. In October 1966,

---

3. Alabama requires defendants to provide Aid to Dependent Children financial assistance "on behalf of any needy child who is a dependent child as defined in the Federal Social Security Act or amendments thereto who shall comply with the applicable requirements of this chapter, and who: (a) Has not sufficient income and resources from all sources to provide a reasonable subsistence compatible with decency and health; (b) who meets any one of the following residence requirements—(1) has resided within the state for one year immediately preceding the application for aid, or (2) was born within the state within one year immediately preceding the application for aid, or whose parent or other near relative (as defined in the Federal Social Security Act) with whom the child is living has resided in the state for one year immediately preceding the birth of said child; (c) has not directly or indirectly disposed of or deprived himself of any property for the purpose of qualifying for the benefits of this chapter; and (d) is not receiving any other type of public assistance for which federal matching is available. * * *" Code of Alabama, Title 49, § 17(14).

Sylvester Smith was advised by an employee agent of the defendants that the "substitute father" of the Smith children was Willie E. Williams; that she and her children were no longer eligible for Aid to Dependent Children financial assistance because Mr. Williams was the "substitute father," and that Mrs. Smith and the children should look to Mr. Williams for financial support. Thereafter, the Aid to Dependent Children financial assistance was formally terminated through the use of the "substitute father" regulation. The evidence reflects that Willie E. Williams has nine children of his own and that he lives with his family, including his wife and eight of their nine children, who are dependent on him for support. Willie E. Williams is not now, nor was he at the time of the termination of benefits to the plaintiffs, willing or able to support the Smith children. Willie E. Williams is the father of none of the children of plaintiff Sylvester Smith and does not live in the Smith home. While the evidence on this point is conflicting, it reflects with reasonable certainty that Dallas County, Alabama caseworker Mrs. Jacquelyn Stancil received a report that Willie E. Williams was periodically visiting in the home of Sylvester Smith and that from time to time Willie E. Williams and Sylvester Smith were engaging in sexual activity. The length or frequency of Willie E. Williams' visits with Sylvester Smith does not appear. Sylvester Smith failed to submit "evidence showing that the relationship" had been discontinued.

### III.

Some discussion of the federal-state welfare relationship, particularly the negotiation concerning the promulgation of policies such as are now under consideration, provides some pertinent historical background. In January 1961, the Secretary of Health, Education and Welfare—

after a hearing on a plan that had been adopted and promulgated by the State of Louisiana which was very similar to the rule now under consideration—stated what later became known as the "Flemming Ruling":[4]

"I have concluded that when a needy child who otherwise fits within the Aid to Dependent Children program of the State is denied the funds that are admittedly needed to provide the basic essentials of life itself, because of the behavior of his parent or other relative, the State plan imposes a condition of eligibility that bears no just relationship to the Aid to Dependent Children program. I therefore believe that this Department should inform the State agencies administering Aid to Dependent Children plans that eligibility conditions with the effect described above are not compatible with entitlement for continued Federal grants."

The United States Commissioner of Social Security, following the "Flemming Ruling," issued a statement to the effect:[5]

"A State plan for aid to dependent children may not impose an eligibility condition that would deny assistance with respect to a needy child on the basis that the home conditions in which the child lives are unsuitable, while the child continues to reside in the home. Assistance will therefore be continued during the time efforts are being made either to improve the home conditions or to make arrangements for the child elsewhere."

It was announced that the United States Department of Health, Education and Welfare's reasons for rejecting such policies were that:[6]

"It is of great importance that State agencies should be concerned about the effects on children of the environment

---

4. Notice of this ruling was given to all "State Agencies Administering Approved Public Assistance Plans," including the Alabama Department of Pensions and Security, on January 17, 1961 in State Letter No. 452, Bureau of Public Assist-

ance, Social Security Administration, Department of Health, Education and Welfare, page 1.

5. Ibid, p. 2.

6. Id.

in which they are living and that services be provided which will be directed toward affording the children maximum protection and strengthening their family life. Whenever there is a question of the suitability of the home for the child's upbringing, steps should be taken to correct the situation or, in the alternative, to arrange for other appropriate care of the child. It is completely inconsistent, however, to declare a home unsuitable for a child to receive assistance and at the same time permit him to remain in the same home exposed to the same environment."

Even before the "Flemming Ruling" and as early as April 1956, the then Alabama Commissioner of Welfare and the federal authorities corresponded with some frequency in an effort to determine whether the Alabama policy was in conformity with federal requirements insofar as that policy related to "suitable family" homes, and in April 1959 the United States Department of Health, Education and Welfare by letter indicated certain substantial defects in legislation that was being proposed for the State of Alabama at that time:

"Section 2 of the proposed legislation defines a 'suitable home' as one which provides a 'stable environment' and lists criteria to be applied to the determination of a 'suitable home' and a 'stable environment'. It appears under this definition that the birth status of the child of a non-marital, but stable, union would not affect eligibility if the home was determined suitable. However, one of the criteria listed— 'has continued to have illegitimate children' raises a question as to its meaning and intent. If, regardless of the fact that the home provided a 'stable environment', the children were to be denied ADC because all the children were illegitimate, or because a number of them were illegitimate, it would raise a question of reasonable classification."

\* \* \* \* \* \*

"Section 3 raises a number of questions as to its meaning and its consistency with Section 2. Can 'illicit relationships' be interpreted as not including a 'stable environment', i. e., would a child of a 'stable union' born after the receipt of ADC be regarded as illegitimate?

"If interpreted so that parents maintaining a stable relationship (non-marital) and providing a suitable home for the children receiving ADC because of incapacity of one parent will be removed from ADC if and when another child is born, it would raise a question. The termination of assistance would be due entirely to the birth of an illegitimate child rather than to any change in the home environment that had been considered stable up to that point."

In May 1959 a new suitable home policy was submitted to the Department of Health, Education and Welfare. After review by that department, it was declared "unsuitable," and then later, in August 1959, still another suitable home policy was sent to the federal authorities for approval, with the same results. This negotiating continued, and in June 1961 the federal authorities replied to an Alabama submission as follows:

"Since HB 613 appears to contemplate denial of assistance to the children who are permitted to remain in their homes after finding that the home is unsuitable it is inconsistent with Title IV of Social Security Act as amended by P.L. 87–31. Furthermore, finding of unsuitability based solely on birth status of child is also inconsistent with Title IV."

Still later—and over two years after the "Flemming Ruling"—the federal authorities, by letter dated June 12, 1963, advised the welfare authorities for the State of Alabama that the "suitable home" policy bills then being submitted to the Alabama Legislature

" \* \* \* appear to deny assistance to a needy child because he is found

living in a home considered to be unsuitable. Since the proposed legislation provides for denial of assistance under the AFDC program while the child remains in the home without providing for other 'adequate care and assistance for such child,' it cannot be considered to be consistent with the Social Security Act."

The evidence in this case reflects that immediately after his appointment in January of 1963, Ruben K. King, present Commissioner of the Alabama State Department of Pensions and Security, commenced a complete study of the Aid to Dependent Children program in the State of Alabama; this study led to the adoption and promulgation of the "substitute parent" policy now under consideration.[7]

The "substitute father" regulation presently under consideration by this Court is substantially the same as the regulation first submitted to the Department of Health, Education and Welfare in September 1964 by Commissioner King and his organization. Upon receiving the Alabama "substitute father" regulation, the Atlanta Regional Director for the Department of Health, Education and Welfare, by letter dated August 31, 1964, responded by stating:

"We have reviewed Administrative Letter No. 1919 which amended, effective July 7, 1964, the approved Alabama AFDC plan. This Administrative Letter purports to amend your policies on deprivation of parental support or care, with the specifically stated purpose of restricting the AFDC caseload. This amendment goes far beyond your presently approved plan in that it results in ineligibility of all children living in a home with a mother, if she cohabits with a man who is not her husband, or is illegitimately pregnant, or has given birth to an illegitimate child within the preceding six months, irrespective of whether the man has any family relationship with the mother and the child or children.

"This policy raises a serious question with Section 404(b) of the Social Security Act and State Letter No. 452 by denying aid 'with respect to a child because of the conditions in the home in which the child resides'. Under the identified Federal law and policy a State may not impose an eligibility condition that would deny assistance with respect to a needy child on the basis of behavior of the mother or other unsuitable conditions in the home so long as the child continues to reside in the home. The provisions of Administrative Letter No. 1919 seem clearly to be out of conformity with such law and policy.

---

**7.** While the plaintiffs placed considerable emphasis upon facts strongly indicating that the "substitute father" regulation was designed to discriminate and has the effect of discriminating against Negroes, by reason of the facts presented, this case does not rest upon racial considerations and therefore the decision should not rest upon such considerations. On the contrary, this decision should be and will be designed to enure to the benefit of all needy children regardless of their race or color. The Equal Protection Clause is not restricted in its application to the protection of the rights of Negroes. It is more far-reaching, protecting the rights of any identifiable class. See, e.g., the opinion of another panel of this Court, White v. Crook, 251 F. Supp. 401, 408–409 (M.D.Ala.1966).

In this connection, the Alabama Commissioner, Mr. King, testified that since June 1964, when the "substitute father" regulation was promulgated, the Alabama Aid to Dependent Children rolls have been reduced by 16,000 children. Commissioner King's testimony on this point was as follows:
"Q. Can you tell us the approximate number of recipients under the child eligible rule?
A. Do you want it prior to the substitute parent policy?
Q. Prior to and subsequent to.
A. In June of 1964, there were 22,-373 cases in Aid to Dependent Children. In June of 1964, there were 92,124 recipients: of these, 72,764 were children. In January of 1967, there were 71,228 total number of recipients under the ADC program; of which 56,822 were children."

"Other provisions of the policy imposing the burden on the mother with respect to proof of identity of the father or his whereabouts appear to be so unreasonable as to bring into question their acceptability under Federal policy. Eligibility may not be conditioned upon requirements which go beyond the parent's ability to meet.

"The Regional office is unable to accept Administrative Letter No. 1919 for incorporation into your approved AFDC plan. We would suggest, therefore, that you rescind this letter and reinstate the cases that have been closed under this policy."

Considerable correspondence ensued between the Alabama and the federal authorities concerning this "substitute father" regulation; however, this correspondence was to no avail, and the approval of the Department of Health, Education and Welfare to such policy was never obtained. In this connection, the evidence reflects that the Alabama regulation (now amended in minor details) presently in effect has not eliminated the administratively objectionable features of its predecessors.

### IV.

 As noted earlier, Aid to Dependent Children financial assistance is a statutory entitlement under both the laws of Alabama and the federal Social Security Act, and where the child meets the statutory eligibility requirements he has a right to receive financial benefits under the program. It is clear that Alabama, having undertaken to cooperate with the federal government in providing an Aid to Dependent Children program and having accepted federal financial assistance for that purpose, is not now free to bestow the benefits of the program upon some needy children and arbitrarily to deny them to others. There cannot be any picking and choosing of the mothers and children who will be aided if it is done in an irrational or in an arbitrary manner. Some children cannot be classified as eligible and others ineligible without a reasonable basis for distinguishing one class from the other; classifications may only be created which are rationally related to the purpose of the federal and Alabama Aid to Dependent Children statutes. These are some of the basic requirements of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. These basic principles were stated as early as 1896 in Gulf, Colorado and Santa Fe Railway Company v. Ellis, 165 U.S. 150, 155, 17 S.Ct. 255, 257, 41 L.Ed. 666:

"[T]he attempted classification * * * must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis."

The Supreme Court continued by pointing out that "arbitrary selection can never be justified by calling it classification." 165 U.S. at 159, 17 S.Ct. at 258. This doctrine of constitutional law has developed to the extent that its application may be stated as "rules." Those rules were reiterated in Morey v. Doud, 354 U.S. 457, 463–464, 77 S.Ct. 1344, 1349, 1 L.Ed.2d 1485 (1957).

"The rules for testing a discrimination have been summarized as follows:

" '1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2 A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry

the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.' Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 55 L.Ed. 369.''

For illustrations of the breadth of factual situations in which these rules apply, see also Rinaldi v. Yeager, 384 U.S. 305, 308, 309, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966); McLaughlin v. State of Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) and cases cited, 379 U.S. at 190, 191; Hernandez v. State of Texas, 347 U.S. 475, 478, 74 S.Ct. 667, 98 L.Ed. 866 (1954).

■ This Court is clear to the conclusion that Alabama's "substitute father" regulation creates precisely the type of classification prohibited by the Equal Protection Clause. The Alabama regulation directs that Aid to Dependent Children financial assistance not be given to a class of children who meet the statutory eligibility requirements and that this financial assistance be denied for an arbitrary reason—the alleged sexual behavior of the mother; such a reason is wholly unrelated to any purpose of the Aid to Dependent Children statutes. The basic purpose of the program (Title IV of the Social Security Act, 42 U.S.C. § 601 et seq.) and the Alabama statute (Code of Alabama, Title 49, § 17) is to provide financial assistance to needy children who are deprived of the support and care of one of their parents. As a matter of fact, the Alabama statute *requires* the defendants to furnish Aid to Dependent Children financial assistance "on behalf of any needy child who is a dependent child as defined in the Federal Social Security Act." As to this aspect of the program, the federal act defines a "dependent child" as one who is "deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent." Despite this clear legislative purpose of both the federal and Alabama statutes, the "substitute father" regulation directs that aid shall not be given to a particular class of needy dependent children who are deprived of parental

support or care as a result of the death, or continuous absence of their father from the home, and who in all other respects meet the statutory eligibility requirements. In this regard, the Alabama regulation sets forth three situations in which needy dependent children, otherwise eligible, are to be denied this financial assistance:

"(1) When a man (not married to the mother and not the father of the children) lives in the home 'for the purpose of cohabitation' with the mother;

"(2) When a man (not married to the mother and not the father of the children) visits the home 'for the the purpose of cohabiting' with the mother;

"(3) When a man (not married to the mother and not the father of the children) 'cohabits' with the mother 'elsewhere', i. e., outside the home."

It is quite clear, therefore, that the Alabama regulation is directed at a dependent child or children whose mother has non-marital sexual relations with a man or men—or, more broadly, whose mother's conduct is immoral, according to the Alabama authorities—and is not in anywise directed to either the support or care of the children by the mother or by the statutorily created "substitute father." This simply means that, through the promulgation of this "substitute father" regulation, the State of Alabama is looking primarily to the moral conduct of the mother and not to economic factors. The State quite candidly admits in its brief that:

"Nevertheless, Defendants maintain that the state does not have to close its eyes to the way illegitimate children get born—that the recognition of the economic utilization of 'substitute parents' is not a violation of the Flemming Ruling."

The expressed interest of the State of Alabama in not desiring to underwrite financially or approve situations which are generally considered immoral is a

laudable one; the State's argument that this regulation is "a genuine attempt to place the responsibility for taking care of children on persons who bring them into being" is, however, wholly without any realistic or rational basis insofar as this "substitute father" regulation is concerned. The punishment under the regulation is against needy children, not against the participants in the conduct condemned by the regulation. The State is not without means of attempting to solve the problem which it recognizes, short of depriving children of aid because of immoral conduct of the mother. Under the Alabama Support and Desertion Laws (Title 34, §§ 89–104) and the Alabama Paternity Statutes (Title 27, § 12(1)–12(9)), the father of children born out of wedlock may be required to support and maintain the children from a financial standpoint. Under Alabama Welfare Agency policies or regulations, if the home situation is considered unsuitable appropriate action may be taken to place the needy children under the care of a Juvenile Court. The State's argument, implied throughout the brief,[8] that the "substitute father" regulation has a rational basis to the definition under 42 U.S.C. § 606(a) of dependent child(ren) who are to receive aid under the Act, by reason of the public's concern over the continued procreation of illegitimate children by persons who seem economically unable to care for them, is utterly unrealistic.

■ The approval or disapproval of sexual promiscuity is not here involved. What is involved is whether needy children can be deprived of public assistance through the use of a State regulation that creates classifications not rationally related to need and through the use of these classifications deprives approximately 16,000 Alabama children of financial assistance to which they are otherwise entitled. It should be noted that there is no vested legal right for anyone to receive public financial assistance; neither the United States nor the Alabama Constitution requires Alabama to grant financial assistance to needy dependent children. However, once Alabama undertakes to provide a statutory program of assistance, it must do so in conformity with the constitutional mandate of equal protection. Alabama cannot pick and choose the mothers and children it will aid through the use of some classifications which are not rationally related to the purpose of the applicable statutes. Anders v. State of California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967); Rinaldi v. Yeager, supra; Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, 55 A.L.R.2d 1055 (1956), reh. denied 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480. The irrationality and the unreasonableness of the Alabama regulation is starkly revealed when it is realized that the regulation singles out from the Alabama needy dependent children a particular class who are illegitimate, or whose mothers engage in an illicit sexual relationship, or who have an illegitimate child born in their family, and for one or more of these reasons renders ineligible those children otherwise eligible to receive financial benefits under the Aid to Dependent Children program. This "substitute father" gains his parental status under the Alabama regulation not by any act of fatherhood to the children and not by any support furnished, but merely by having sexual relations with the mother. The regulation assumes that from the mother's alleged sexual relationship the man has assumed the role of the father to her children; this despite the fact that the man is not the father of the chil-

8. E. g.: "Certain phenomena have become apparent and a matter of realistic concern to everyone is the continued procreation of illegitimate children by persons who seem economically unable to care for them and undoubtedly in some instances seem to lack initiative or the desire to properly care for them. This is by no means limited to members of any one race. * * *"

dren, is not married to the mother, is not living in the home, owes no duty of fatherhood to the children and gives them no financial support or parental care.

This Court concludes that the Alabama "substitute father" regulation is an arbitrary and discriminatory classification which results in the denial of financial benefits to needy children who are clearly eligible and entitled to receive such benefits under both the federal and State statutes and constitutional regulations and that said children are denied for reasons unrelated to and in conflict with the purposes of these statutes. For this reason, on its face and as the evidence reflects it has been applied in this case, the Alabama "substitute father" regulation deprives those children of the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States.

In view of the conclusions herein reached, it is not considered necessary or even appropriate to deal with plaintiffs' other contentions.

A formal order will be entered accordingly.